CAZ HASHEMI, State Bar No. 210239
STEPHEN B. STRAIN, State Bar No. 291572
BETTY CHANG ROWE, State Bar No. 214068
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: chashemi@wsgr.com
       sstrain@wsgr.com
       browe@wsgr.com

Attorneys for Defendants
Seagate Technology Holdings plc,
William D. Mosley, and Gianluca Romano

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| *In re Seagate Technology Holdings plc, Securities Litigation* | CASE NO.: 3:23-cv-03431-RFL |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |
| | Hearing Date: February 27, 2024 |
| | Time:          10:00 am |
| | Courtroom:    15 – 18th Floor |
| | Honorable Rita F. Lin |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................3

    I.      THE COMPLAINT FAILS TO PLEAD A MISSTATEMENT OR OMISSION ..3

          A.      Plaintiffs' Overarching Theory of Fraud Fails........................................... 3

          B.      No Falsity As To Compliance Statements, SOX Certifications and Risk Factors....................................................................................................... 4

          C.      No Falsity As To Statements "Downplaying" "Reliance On" Huawei HDD Sales ..................................................................................................... 5

          D.      No Falsity As To Statements Regarding Revenue "Drivers" ..................... 6

    II.     THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER ...................................................................................................7

    III.    THE COMPLAINT FAILS TO PLEAD LOSS CAUSATION ...........................10

CONCLUSION.....................................................................................................................10

**CASES**

*Basic Inc. v. Levinson*,
 485 U.S. 224 (1988)...................................................................................................5

*Carr v. Zosano Pharma Corp.*,
 2021 WL 3913509 (N.D. Cal. Sept. 1, 2021) ..............................................................8, 10

*Chang v. Accelerate Diagnostics, Inc.*,
 2016 WL 3640023 (D. Ariz. Jan. 28, 2016) .................................................................3

*Cheng v. Activision Blizzard, Inc.*,
 2022 WL 2101919 (C.D. Cal. Apr. 18, 2022) ...............................................................9

*City of Dearborn Heights 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
 856 F.3d 605 (9th Cir. 2017) ........................................................................................4

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*,
 963 F. Supp. 2d 1092 (E.D. Wash. 2013)......................................................................9

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
 880 F. Supp. 2d 1045 (N.D. Cal. 2012) ........................................................................3

*Evanston Police Pension Fund v. McKesson Corp.*,
 411 F. Supp. 3d 580 (N.D. Cal. 2019)...........................................................................7

*Huang v. Higgins*,
 443 F. Supp. 3d 1031 (N.D. Cal. 2020).........................................................................7

*Ikeda v. Baidu, Inc.*,
 2021 WL 1299046 (N.D. Cal. Apr. 7, 2021) ........................................................4, 5, 7, 8

*In re Apple Comput. Sec. Litig.*,
 886 F.2d 1109 (9th Cir. 1989) ......................................................................................3

*In re Intel Corp. Sec. Litig.*,
 2019 WL 1427660 (N.D. Cal. Mar. 29, 2019).................................................................3

*In re Iso Ray, Inc. Sec. Litig.*,
 189 F. Supp. 3d 1057 (E.D. Wash. 2016)......................................................................8, 9

*In re Nektar Therapeutics Sec. Litig.*,
 34 F.4th 828 (9th Cir. 2022) ........................................................................................10

*In re Obalon Therapeutics, Inc. Sec. Action*,
 2019 WL 4729461 (S.D. Cal. Sept. 25, 2019)................................................................3

*In re Syncor Int'l Corp. Sec. Litig.*,
 239 F. App'x 318 (9th Cir. 2007) ..............................................................................1, 6, 7

*Jaeger v. Zillow Grp., Inc.*,
 644 F. Supp. 3d 857 (W.D. Wash. 2022).......................................................................3

*Karam v. Corinthian Colls. Inc.*,
   2012 WL 8499135 (C.D. Cal. Aug. 20, 2012) ..................................................................7

*Karinkski v. Stamps.com, Inc.*,
   2020 WL 281716 (C.D. Cal. Jan. 17, 2020) ....................................................................7

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) .......................................................................................10

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011).............................................................................................................6

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) .....................................................................................7, 10

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015)...........................................................................................................4

*Prodanova v. HC Wainwright & Co.*,
   993 F.3d 1097 (9th Cir. 2021) ........................................................................................9

*Shapiro v. Matrixx Initiatives, Inc.*,
   2011 WL 13047298 (D. Ariz. Sept. 26, 2011)...............................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)...........................................................................................................1

*Todd v. STAAR Surgical Co.*,
   2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) ...............................................................4

*Webb v. Solarcity Corp.*,
   884 F.3d 844 (9th Cir. 2018) ...........................................................................................9

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ...........................................................................................9

**RULES**

15 C.F.R. § 764.2(e)....................................................................................................................9

## INTRODUCTION

As discussed in Defendants' Motion, the PSLRA[1] imposed heightened pleading standards that require Plaintiffs to plead "with particularity" specific facts showing a materially false or misleading statement made by Defendants with scienter. Mot. 4-5; *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (Congress enacted the PSLRA "[a]s a check against abusive litigation by private parties"). The Complaint comes nowhere close to meeting Plaintiffs' pleading obligations. This case bears none of the hallmarks of a potentially viable securities fraud claim—the Complaint alleges no confidential witness statements, no legally cognizable financial motive for fraud, no coherent fraud theory, and no internal report, analysis, statement or action by Defendants that was inconsistent with the challenged statements. Instead, Plaintiffs rely on hindsight, unwarranted inferences, and broad-brushed allegations of misconduct, none of which pleads a false or misleading statement made with scienter pursuant to the PSLRA.

The Opposition ("Opp.") concedes much. It expressly abandons Plaintiffs' primary theory of fraud: "Plaintiffs do not allege Defendants concealed that Seagate might continue shipping HDDs to Huawei[.]" Opp. 6. Plaintiffs also no longer argue that the findings in the BIS Order and Seagate's purported "admissions" – the foundation of Plaintiffs' case – support a strong inference of scienter. That is not surprising as BIS only found that Seagate "incorrectly interpreted the FDP rule" (Ex. 17 ¶ 8) and did *not* charge Seagate with a knowing or deliberately reckless violation. Plaintiffs' remaining theories—that Defendants (1) misled the market about Seagate's compliance with the new FDPR and (2) concealed the extent to which Huawei sales contributed to Seagate's financial performance (Opp. 6)—fail for the reasons set forth below and in Defendants' Motion.

***No Falsity.*** Defendants did not mislead the market about Seagate's compliance. On the first day of the class period, Defendants informed investors they did not believe the newly enacted FDPR imposed any restrictions on, or a license requirement for, Seagate's continued HDD sales to Huawei. ¶¶ 135-137. Based on that belief, Defendants represented that Seagate complied with

---

[1] This Reply uses the same terms and conventions as in Defendants' opening brief. ECF No. 72.

-1-

applicable export laws. ¶¶ 137, 139, 152. Although Plaintiffs claim such statements were false, they do not allege any facts, let alone specific facts, showing that the compliance statements were false *when made.* The "warnings" (a supplier letter, two law firm alerts, and competitors' actions) did not address Seagate or its products. The congressional inquiry was just that, an inquiry. The first time Plaintiffs allege that Seagate was informed of a potential violation was the BIS proposed charging letter, a development Seagate disclosed. ¶¶ 8, 105. Even then, Plaintiffs fail to allege facts suggesting Defendants believed or knew that Seagate's reading of the FDPR was wrong.

Moreover, Defendants' compliance statements were not false or misleading because Seagate had not been found noncompliant at the time. BIS issued the order finding violations nearly six months *after* the last compliance statement. Defendants had no duty to disclose uncharged, unadjudicated conduct that Defendants did not know was improper and believed was proper. A subsequent finding of a violation does not render false an earlier statement of compliance. Plaintiffs also fail to plead falsity regarding the alleged extent of Huawei's contribution to Seagate's financial performance, including particularized facts showing that Huawei sales "drove" Seagate's performance. Plaintiffs' attempts to recast Defendants' falsity arguments as raising issues of fact when they do not (Opp. 5-6 ("truth-on-the-market"), 7-9 (materiality)) only underscore the weaknesses of their claims.

***No Scienter.*** The Opposition does not point to a single contemporaneous fact showing that Defendants knew or were deliberately reckless in not knowing that Seagate's interpretation of the new complex FDPR was incorrect. The BIS Order contained no such findings. Yet Plaintiffs invite the Court to do so on nothing more than far-flung allegations based on speculation and innuendo. To survive a motion to dismiss, plaintiffs in securities class action fraud suits normally try to point to a confidential witness or an internal analysis, hoping it creates a strong inference that public statements were made with scienter. Nothing of the sort is found in the Complaint. Plaintiffs' thin allegations do not overcome the competing inference of a good faith interpretation of the FDPR.

REPLY ISO DEFS.' MOT. TO DISMISS CONSOLID. COMPLT;
CASE NO. 3:23-CV-03431-RFL

At bottom, this case is simply an opportunistic and futile attempt to transform a regulatory settlement into securities fraud. The Complaint should be dismissed in its entirety.

## ARGUMENT

## I.  THE COMPLAINT FAILS TO PLEAD A MISSTATEMENT OR OMISSION

### A.  Plaintiffs' Overarching Theory of Fraud Fails

Plaintiffs' overarching fraud theory fails because Seagate disclosed the very facts Plaintiffs claim were omitted. Mot. 5-7; ¶¶ 135-137. Knowing that Seagate's disclosures preclude a finding of falsity, Plaintiffs mischaracterize Defendants' arguments as a "truth-on-the-market" defense. Opp. 5-6. Defendants do not assert that defense. "Truth on the market" is an argument that the omitted information "was made credibly available to the market by *other sources*," not by defendants,[2] and therefore excuses a defendant's failure to disclose material information. *See In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *13 n.18 (N.D. Cal. Mar. 29, 2019). Here, Defendants argue that no false statements were made in the first place because *Defendants disclosed* the facts Plaintiffs claim were missing. Mot. 5-7; ¶¶ 135-137. That is, Defendants' disclosures negate falsity. Mot. 6. Courts routinely reject plaintiffs' efforts to create a factual issue by recasting defendants' arguments as "truth on the market."[3] So too here.

Faced with Seagate's forthright disclosures of its belief that a license was not required for its continued HDD sales to Huawei, Plaintiffs abandon the central theory of their case. Whereas the Complaint summarized the alleged fraud as Defendants "concealing the Company's illegal mass export…of advanced hard disk drive…technology to Huawei,"[4] the Opposition asserts, "Plaintiffs do not allege Defendants concealed that Seagate might continue shipping HDDs to

---

[2] *In re Apple Comput. Sec. Litig.*, 886 F.2d 1109, 1115 (9th Cir. 1989); *see Jaeger v. Zillow Grp., Inc.*, 644 F. Supp. 3d 857, 870 n.9 (W.D. Wash. 2022) ("truth-on-the-market defense occurs when a third party releases the information at issue to the marketplace, not when a defendant itself releases that information.").

[3] *See, e.g., Jaeger*, 644 F. Supp. 3d at 870 n.9; *Intel*, 2019 WL 1427660, at *13 n.18; *In re Obalon Therapeutics, Inc. Sec. Action*, 2019 WL 4729461, at *6 (S.D. Cal. Sept. 25, 2019); *Chang v. Accelerate Diagnostics, Inc.*, 2016 WL 3640023, at *5 (D. Ariz. Jan. 28, 2016); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1066 (N.D. Cal. 2012).

[4] ¶ 1; *see, e.g.*, ¶¶ 4, 6, 9, 10.

Huawei." Opp. 6. The remaining statements concern "the Company's compliance with the FDP[R] and the extent to which Huawei sales contributed to its financial performance." *Id.* But Plaintiffs do not plead the requisite facts showing falsity for either category. Mot. 6; Sections I.B.-D., *infra*.

### B.  No Falsity As To Compliance Statements, SOX Certifications and Risk Factors

Defendants' compliance statements were not false because Seagate undisputedly had not been found to be noncompliant at the time the statements were made. Mot. 7-8. There is no duty to disclose uncharged, unproven misconduct. *Id*. Based on that established legal principle, courts in this District consistently hold that a compliance statement is *not* false or misleading based on a subsequent regulatory inquiry or finding of noncompliance. *Id*. Plaintiffs ignore this body of law, cite nothing to the contrary,[5] and invite this Court to depart from the law in this District.

The Opposition fails to point to any statement by any Defendant or witness or any internal corporate document that was inconsistent with the compliance statements when made. *See City of Dearborn Heights 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 617 (9th Cir. 2017) (insufficient alleged facts "that would allow us to infer subjective falsity"). In the Opposition, Plaintiffs cite *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175, 188-89 (2015). Opp. 7. But the Supreme Court held that opinion statements require allegations of subjective falsity or facts inconsistent with information available to defendants at the time. *Omnicare*, 575 U.S. at 196-97; *see Ikeda v. Baidu, Inc.*, 2021 WL 1299046, at *8 (N.D. Cal. Apr. 7, 2021) (compliance statements were nonactionable opinion where they were not subjectively false, among other things). Unable to allege specific facts indicating that Defendants did not believe what they said or facts showing the statements were inconsistent with other information available to Defendants at the time, Plaintiffs rely on the BIS

---

[5] Plaintiffs' two out-of-district cases are readily distinguishable. *See Todd v. STAAR Surgical Co.*, 2016 WL 6699284, at *2, *6 (C.D. Cal. Apr. 12, 2016) (FDA advised of violations "*before …* positive announcements"); *Shapiro v. Matrixx Initiatives, Inc.*, 2011 WL 13047298, at *2, *4 (D. Ariz. Sept. 26, 2011) (statements "made with the knowledge" that company had received 800 adverse event reports it concealed but was required by laws to disclose).

Order, which did not exist at the time.[6] But a subsequent finding of a violation does not render false or misleading an earlier statement of compliance. Mot. 8.[7]

The SOX certifications were not false because (1) the BIS Order, the basis for alleged falsity, did *not* address internal controls; and (2) the certifications addressed "internal control *over financial reporting*." *E.g.*, ¶¶ 142, 147; Mot. 9. Plaintiffs do not dispute Defendants' first point and ignore the second, insisting the certifications stated that Seagate "had instituted controls to ensure compliance" with laws. Opp. 10. Plaintiffs cannot rewrite the SOX certifications. The Complaint also fails to allege any facts showing falsity of the risk factor that "there were no assurances" that Seagate "will not violate these or other applicable laws, rules and regulations to which we are and may be subject." *See, e.g.*, ¶¶ 141, 146. Plaintiffs' only response, that the risk of "heightened regulatory scrutiny" "already had 'come to fruition'" (Opp. 10), misses the mark because the risk factor concerned violations of law, which did not materialize until the BIS Order.[8]

### C.   No Falsity As To Statements "Downplaying" "Reliance On" Huawei HDD Sales

The September 14, 2020 and October 22, 2020 statements (¶¶ 182, 185) were not false and did not "downplay" Seagate's "reliance on" Huawei sales. Mot. 10; ¶ 90. Plaintiffs do not contest that Huawei HDD sales were 3.06% of Seagate's total revenue for Q1 2021 (¶ 90), less than 10% as Defendants conveyed. Glossing over falsity, Plaintiffs skip to materiality, claiming Defendants "ask this Court to create a new rule that a business practice is immaterial as a matter of law if it contributes less than 10% of company-wide revenue." Opp. 8. Not so. Defendants argue that Plaintiffs have not pled with the specificity required by the PSLRA facts showing the statements were false in the first instance, let alone *materially* false. *See Basic Inc. v. Levinson*, 485 U.S. 224,

---

[6] Plaintiffs' claim that the timing of the BIS Order is an "improper fact issue" (Opp. 7) is baseless. The BIS Order establishes the date of its issuance on its face. ¶¶ 9, 109; Ex. 17 at 16.

[7] In search of a disclosure duty, Plaintiffs argue that statements that do not even mention compliance but simply discuss "the source of revenue[]" trigger a duty to disclose unproved alleged misconduct (Opp. 7), which Defendants address in Section I.D. The Opposition also fails to address Defendants' argument that the compliance statements are nonactionable puffery (Mot. 8), and therefore waives it. *See Ikeda*, 2021 WL 1299046, at *7.

[8] Plaintiffs' assertion that "Seagate withheld the PCL until after it had stopped selling to Huawei" (Opp. 8 n.6) is wrong. Seagate received the PCL in August 2022, long after the shipments ceased.

-5-

238 (1988) (allegations must support both falsity and materiality). Defendants also are not asking for "a new rule." Defendants merely r*esponded* to *Plaintiffs'* allegations that referenced 10%,[9] which responses Plaintiffs do not substantively engage with, let alone refute.

### D.  No Falsity As To Statements Regarding Revenue "Drivers"

Equally deficient are Plaintiffs' allegations that Seagate concealed the extent of Huawei's contribution to its total revenue by failing to attribute its financial performance to Huawei HDD sales. Opp. 8. Plaintiffs fail to plead the underlying fact—that Seagate's financial performance from Q2 2021 to Q3 2023 was in fact "driven" by "illegal" Huawei sales. Mot. 11. The Opposition glosses over this basic flaw.[10] Seagate's performance *could not* have been "driven" by Huawei HDD sales after Q1 2022 when the sales stopped. For the period before, Seagate would have *met* its revenue guidance for Q1, Q2 and Q4 of 2021 *without the Huawei HDD sales*.[11] ¶ 90. Moreover, Seagate's HDD revenue *increased after* Huawei shipments stopped (whereas a peer's HDD revenue dropped after its shipments stopped) (¶ 52), further dooming Plaintiffs' "driver" claims.

This fatal defect aside, Plaintiffs fail to show that Seagate had a duty to disclose the extent of Huawei HDD revenue. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) (no "affirmative duty to disclose any and all material information"); ¶ 182, Exs. 4, 5 (Seagate did not disclose specific customer information). Plaintiffs try to create a duty. Relying on *In re Syncor International Corp. Securities Litigation*, 239 F. App'x 318 (9th Cir. 2007), Plaintiffs posit, "[w]hen a company puts at issue the cause of its success, it must disclose that improper or illegal business practices also contributed." Opp. 8. But in *Syncor*, the company *knew* its business practices were illegal and accounted for its "success." In that limited circumstance, statements

---

[9] *Plaintiffs* raised 10% in their allegations of a purported GAAP violation. ¶ 188 & ¶ 47 n.4. There was no GAAP violation, which the Opposition does not refute. The 10% figure was also mentioned in the statement challenged by *Plaintiff*s (¶¶ 181-182), prompting Defendants' response.

[10] Plaintiffs' broad and general *argument* that "Seagate's sales to Huawei were both quantitatively *and* qualitatively material to the Company" because they purportedly "boosted" revenue by 10%+ (Opp. 9) is no substitute for particularized *facts* required by the PSLRA.

[11] Plaintiffs' argument that revenues falling within the lower range of guidance is tantamount to missing guidance altogether (Opp. 9 n.9) defies reason. The analyst reports Plaintiffs submit are of no avail. Issued in 2022 and 2023, they concerned different time periods. *See* Pl. Exs. A-D.

REPLY ISO DEFS.' MOT. TO DISMISS CONSOLID. COMPLT;
CASE NO. 3:23-CV-03431-RFL

attributing the company's success "solely to legitimate practices," while omitting the *known* illegal practice, created an impression that materially differed from reality. *Syncor*, 239 F. App'x at 320-21 (plaintiffs alleged facts via confidential witness statements that "illegal payments were in fact a significant reason" for overseas growth, officers "privately credit[ed] an illegal payment scheme" for the growth, and that defendant "used terms such as 'bribe' and 'buying off doctors'").

This case stands in stark contrast to *Syncor*. *First*, Plaintiffs' allegations fail to show Defendants' awareness that the business practice was illegal when the statements were made. *See Huang v. Higgins*, 443 F. Supp. 3d 1031, 1050 (N.D. Cal. 2020) (COO's statement "comes nowhere near" an admission "off label" marketing). *Second*, there are no allegations that Defendants privately credited Huawei HDD sales for Seagate's performance. *See Karam v. Corinthian Colls. Inc.*, 2012 WL 8499135, at *8 (C.D. Cal. Aug. 20, 2012). *Third*, Plaintiffs fail to allege "specific facts showing that [Seagate's revenue] growth was *so* dependent on the alleged misconduct that the failure to mention that conduct when attributing growth to legitimate factors would create" an impression that materially differed from reality. *Id.* The allegations indicate Seagate's *non*-dependance on Huawei HDD sales. ¶¶ 52, 90; Mot. 10-11. *Finally*, Plaintiffs concede Seagate disclosed the underlying conduct (Opp. 6), Seagate never stated it had or needed a license to continue HDD sales to Huawei (Mot. 11) and stated the opposite (¶¶ 136, 137), and Plaintiffs do not challenge the veracity of the "legitimate factors." *See Ikeda*, 2021 WL 1299046, at *11-12 (statements unrelated to "compliance with regulations" were not misleading).[12]

## II.   THE COMPLAINT FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

The Opposition confirms Plaintiffs' failure to meet the PSLRA's high burden to plead scienter. *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) ("[t]he PSLRA's 'strong inference' requirement has teeth" and "is an 'exacting' pleading obligation"). Nowhere does the

---

[12] Plaintiffs' other in-circuit cases also do not support the broad disclosure duty Plaintiffs advocate. *See Karinkski v. Stamps.com, Inc.*, 2020 WL 281716, at *14 (C.D. Cal. Jan. 17, 2020) (finding *no* disclosure duty); *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 598-99 (N.D. Cal. 2019) (finding duty to disclose that drug price increases were driven by illegal activity because defendants' statements attributed profitability specifically to generic drug price increases).

-7-

Opposition point to any specific contemporaneous facts showing that Defendants knew or were deliberately reckless in not knowing that Seagate's interpretation of the new and technically complicated FDPR was incorrect.[13] Instead, the Opposition disregards facts, relies on conclusory allegations and unwarranted inferences, cites inapplicable cases that are often out-of-circuit, attempts to rewrite facts to suit Plaintiffs' narrative, and skirts Defendants' arguments and cases.

Plaintiffs' "warning" allegations fail for the reasons stated in the Motion (Mot. 12), which Plaintiffs largely ignore. Plaintiffs continue to pretend that a supplier's letter warned about *Seagate's* products (Opp. 11) when the letter opined about *the supplier's* equipment, not Seagate's products. Ex. 17 ¶ 18. Plaintiffs also have no answer to the well-established tenet that allegations showing the mental state of other persons are insufficient to plead the mental state of defendants.

The "absurdity" prong of the core operations doctrine (Opp. 11-12) is inapplicable. Plaintiffs' characterization of Huawei as one of Seagate's "most significant customers" (*id.* 11) is unsupported and misplaced. Plaintiffs fail to show it would be "absurd" that the Individual Defendants were unaware that their reading of the FDPR was incorrect. None of the "warnings" addressed Seagate and its products. It is entirely reasonable to infer that the Individual Defendants (neither are lawyers, let alone export law experts) understood that Seagate's interpretation of the new technically complex regulations was correct. *See Ikeda*, 2021 WL 1299046, at *16 (no scienter where allegations did not support CEO and CFO having "intimate knowledge" of compliance issues). And Plaintiffs' misplaced emphasis on the importance of the HDD business to Seagate (Opp. 12) says nothing about the interpretation of the FDPR. The core operations doctrine requires Plaintiffs to "'produce either (1) specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations … or (2) witness accounts demonstrating that executives had actual involvement'" in the fraudulent scheme. *Carr v. Zosano Pharma Corp.*, 2021 WL 3913509, at *11 (N.D. Cal. Sept. 1, 2021).[14] Plaintiffs plead neither.

---

[13] None of the "contemporaneous facts" Plaintiffs identified (Opp. 13) show knowledge that Seagate's interpretation of the FDPR was incorrect.

[14] Plaintiffs' sole absurdity case, *In re Iso Ray, Inc. Securities Litigation*, 189 F. Supp. 3d 1057

Plaintiffs' arguments regarding the remaining class-period allegations are equally weak. The Opposition abandons the claim that the shipment stoppage supports scienter.[15] Allegations of noncooperation with an investigation (Opp. 11; ¶ 119) are not well-pled[16] and, in any event, even allegations of active obstruction of an investigation (not alleged here) do not plead scienter. *See Cheng v. Activision Blizzard, Inc.*, 2022 WL 2101919, at *11 (C.D. Cal. Apr. 18, 2022).

Abandoning the heart of their scienter allegations, Plaintiffs no longer rely on Seagate's "admissions" or BIS's findings. Nor do Plaintiffs dispute that BIS simply found that the "company incorrectly interpreted the FDP rule." Ex. 17 ¶ 8. Plaintiffs argue BIS's findings do not suggest "this was an innocent mistake" (Opp. 3 n.2) but fail to explain why BIS did not charge Seagate with a *knowing* violation (15 C.F.R. § 764.2(e)). The nature of the actual violation negates scienter. Mot. 13. Also, regulatory remedial measures (Opp. 12-13) do not support scienter. *See City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1139 (E.D. Wash. 2013). Plaintiffs are left with far-removed events—a single employee departure and temporary salary reductions (Opp. 12; ¶ 132)—which are insufficient. *See* Mot. 14 n.17.

Further, Plaintiffs' failure to plead a fraudulent motive spotlights the absence of scienter. *See Prodanova v. HC Wainwright & Co.*, 993 F.3d 1097, 1107 (9th Cir. 2021) ("we expect that a financial motive for securities fraud will be clear"). The Opposition claims Seagate was motivated to alleviate "economic pressure" (Opp. 13), but such "routine corporate objectives" do not provide a motive to commit fraud. *See, e.g.*, *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018).

---

(E.D. Wash. 2016), involved the CEO's knowledge where the success of a clinical study for the company's only product was "critical" to its success. *Id.* at 1078-79. Here, Huawei HDD sales were not "critical" to Seagate's success (*see* ¶¶ 52, 90) and Huawei was not the only customer. Plaintiffs' vague claims of "senior management's close involvement" in Huawei contracts (Opp. 12) and that the Individual Defendants "personally signed off" on HDD sales and credit lines (*id.* 13) are not supported by specific facts, including those suggesting knowledge of illegality.
[15] *See* Mot. 13 n.15. Plaintiffs also fail to show a GAAP violation, falsity of the SOX certifications, or the widespread nature of the conduct (Opp. 13). In any event, such allegations do not add up to scienter. Mot. 13; *see Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1004 (9th Cir. 2009).
[16] Plaintiffs fail to allege facts showing noncooperation. The congressional report noted several instances of Seagate's cooperation. Ex. 10 at 1 n.3; *id.* at 5.

REPLY ISO DEFS.' MOT. TO DISMISS CONSOLID. COMPLT;
CASE NO. 3:23-CV-03431-RFL

Plaintiffs also fail to explain how their fraud theory makes any sense.[17] *See* Mot. 14. Nor do Plaintiffs refute the absence of "notable features that tend to be 'hallmarks of a potentially viable securities claim'" (*Carr*, 2021 WL 3913509, at *10)—such as confidential witnesses, a financial motive, a coherent fraud theory, and statements or actions inconsistent with public disclosures. From a holistic view, the lack of well-pled scienter allegations does not overcome the competing inference that Defendants made a good faith interpretation of the new and complex FDPR.

## III.   THE COMPLAINT FAILS TO PLEAD LOSS CAUSATION

The March 8, 2022 and July 21, 2022 disclosures were not corrective because, as Plaintiffs concede, they said nothing about Huawei or the relevant export laws. Opp. 14. As such, Plaintiffs fail to "'trac[e] the loss back to the *very facts* about which the defendant lied.'" *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838 (9th Cir. 2022). Nor do the disclosures "relate back" to the alleged misstatements; they did not, as Plaintiffs assert, "acknowledged that poor results were driven by declining HDD sales in China." Opp. 14. The disclosures attributed the results to *non-HDD* related factors and reported an *increase* in total HDD shipments for Q4 2022.[18] Moreover, the disclosure must *not* relate to "some other negative information about the company." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016), whereas both disclosures do, as shown.[19]

### CONCLUSION

For the reasons above and in the Motion, the Complaint should be dismissed in its entirety.

---

[17] Trying to escape *Endologix*, Plaintiffs claim "the Complaint does not allege Defendants knew their fraud would inevitably be discovered; it alleges that they held out hope that the benefits would outweigh the risks." Opp. 13 n.14. Yet the Complaint avers that Seagate "knew" the "sales contravened the FDPR" (¶ 119) and "gamble[d]" that the sales "would offset any regulatory risk" (¶ 53). *Carr* found similar allegations "concede[d]" some "basis" for defendants' belief, which negated scienter. 2021 WL 3913509, at *10.

[18] The March 2022 disclosure "attributed the weakness to a variety of 'transitory' business factors, including 'freight logistics.'" ¶ 98; *see* ¶ 7. The July 2022 disclosure noted "impacts from COVID lockdowns in Asia, *non-HDD* components shortages, and global inflationary pressures" and an *increase* in HDD shipments for the quarter. ¶¶ 7, 218; Ex. 21 at 3-4, 6. The Court may properly consider earnings call transcripts under the doctrine of incorporation by reference (¶¶ 7, 100, 216, 218) and judicial notice. *See* ECF No. 72-1, at 3-4, 8.

[19] Even under the materialization of risk theory (Opp. 14 n.15), which the Ninth Circuit "has never expressly adopted," Plaintiffs must "allege that the defendant lied about 'the very facts' causing the plaintiffs' losses" (*Nektar*, 34 F.4th at 838 n.6), which the disclosures do not do.

-10-

Dated:  December 18, 2023

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI,
Professional Corporation

By:  */s/ Caz Hashemi*
       Caz Hashemi

*Attorneys for Defendants Seagate Technology Holdings plc, William D. Mosley, and Gianluca Romano*

-11-