# EXHIBIT 17

**Foreign-Produced Direct Product (FDP) Rule as it Relates to the Entity List
§ 736.2(b)(3)(vi) and footnote 1 to Supplement No. 4 to part 744
Updated December 18, 2020
(This document is subject to amendment so check back frequently for updates.)**

**General Topics**

*Q1: What license requirement changes did the August 2020 Foreign-Produced Direct Product Rule (FDP rule), 85 Fed. Reg. 51596 (Aug. 20, 2020) (effective Aug. 17, 2020), make to General Prohibition Three at § 736.2(b)(3) of the Export Administration Regulations (EAR)?*

A1:  The license requirement described in footnote 1 to Supplement No. 4 to part 744 of the EAR is now based on:

   (1) whether the foreign-produced item:

   (i) is the direct product of "technology" or "software" subject to the EAR and classified under one of the specified Export Control Classification Numbers (ECCN); or

   (ii) is produced by any plant or major component of a plant that is located outside the United States, when the plant or major component of a plant itself is a direct product of U.S.-origin "technology" or "software" and classified under one of the specified ECCNs; and

   (2) there is knowledge that:

   (i) the foreign-produced item will be incorporated into, or will be used in the "production" or "development" of any "part," "component," or "equipment" produced, purchased, or ordered by a footnote 1 designated entity; or

   (ii) a footnote 1 designated entity is a party to any transaction involving the foreign-produced item, e.g., as a "purchaser," "intermediate consignee," "ultimate consignee," or "end-user."

*Q2: Does the August 2020 FDP rule apply to non-U.S. companies?*

A2: Yes, the scope of this rule includes both U.S. companies and non-U.S. companies.  The rule imposes license requirements on <u>any</u> foreign-produced items that are subject to the FDP rule.

*Q3:  Did the licensing review policy for items that meet the criteria of the FDP rule change?*

A3:  Yes.  License applications for foreign-produced items controlled by footnote 1 to Supplement No. 4 to part 744 of the EAR that are capable of supporting the "development" or "production" of telecom systems, equipment and devices at only below the 5G level (e.g., 4G, 3G, etc.) will be reviewed on a case-by-case basis.  All other license applications will be

reviewed using the license review policy in the license requirement column of the Entity List for each footnote 1-designated entity, which is presumption of denial.

**Types of Items**

*Q4:  Does the FDP rule only cover semiconductors?*

A4:  No.  The rule applies to any item that meets the criteria of footnote 1 of Supplement No. 4 to part 744 of the EAR.

*Q5:  Does the FDP rule capture foreign-produced EAR99 items that are a direct product of non-U.S.-origin technology or software that is not subject to the EAR?*

A5:  Such a foreign-produced item could be within the scope of the paragraph (b) control. Paragraph (b) of footnote 1 to Supplement No. 4 to part 744 applies to items "produced by" equipment described in paragraph (b).  Thus, if the equipment (which includes testing equipment) covered by paragraph (b) is used to produce the foreign-produced item, such an item is covered.

*Q6:  Does the FDP rule apply to finished and unfinished wafers?*

A6:  Yes, it applies to both finished and unfinished wafers.

*Q7:  Would a wafer be subject to the EAR if the finished integrated circuit or a higher-level assembly incorporating the finished integrated circuit is exported from abroad, reexported or transferred to a footnote 1 designated entity?*

A7:  If the wafer meets the criteria of paragraph (a) or (b) of footnote 1 to Supplement No. 4 to part 744 and the wafer maker has "knowledge" that a footnote 1 designated entity is a party to the transaction involving the finished integrated circuit or higher-level assembly incorporating such wafer, then a license is required to export from abroad the wafer to the integrated circuit manufacturer.  Either the wafer maker or the integrated circuit manufacturer may apply for the license, see Q17 through Q21 below.

*Q8:  Would the wafer require a license if no items within the manufacturing process, including the wafer, finished integrated circuit, or higher-level assembly incorporating the finished integrated circuit, are reexported or transferred to a footnote 1 designated entity (i.e., all production work is handled by a non-footnote 1 designated entity and no items are ever sent to a footnote 1 designated entity)?*

A8:  Yes, it is possible that the wafer would be subject to a license requirement because it is a FDP that meets the criteria of paragraph (a) or (b) and a footnote 1 designated entity, while not the end user or ultimate consignee, is another party to the transaction, e.g., as a "purchaser," "intermediate consignee," or order party.

**Prior Exports**

*Q9:  Aside from the savings clause, does the FDP rule require a license for the servicing or repair of an item lawfully exported prior to the implementation of the August 2020 FDP rule?*

A9:  The FDP rule does not require a license for such transactions though parties need to review other provisions of the EAR to determine if a license is required for such transactions, such as a replacement part for equipment at a footnote 1 designated entity (*see* Supplement No. 4 to part 744 of the EAR).

**Plant/Major Component**

*Q10:  Is the definition of "plant" in the FDP rule limited to wafer foundries or outsourced semiconductor assembly and test facilities (OSATs)?*

A10:  No.  While wafers and semiconductors produced by the equipment described in paragraph (b) are clearly covered by the FDP rule, paragraph (b) refers to any foreign-produced "item" produced with such equipment.

*Q11:  What types of back-end assembly, testing and inspection equipment are considered "essential to the production of" semiconductor products and therefore a "major component of a plant"?  Would BIS provide a list of the specific types of equipment that it considers to be "essential"?*

A11:  Note 1 to paragraph (b) of footnote 1 to Supplement No. 4 to part 744 states that equipment essential to the "production" of an item includes testing equipment.  The term "production," as defined in § 772.1 of the EAR, includes equipment needed for any production stage.  Parties producing items should assess the function of equipment in the production process to determine whether it is essential.  BIS is not in a position to provide a list of equipment.

*De Minimis*

*Q12:  If a part that is subject to the EAR pursuant to the FDP rule is incorporated into a larger foreign product, does it make the larger item subject to the EAR?*

A12:  While incorporation of a part that is subject to the EAR pursuant to the FDP rule does not necessarily make the larger foreign product subject to the EAR, the larger item must be evaluated to determine whether it is subject to the other foreign direct product provisions in § 736.2(b)(3), or the *de minimis* rules in § 734.4 of the EAR.

**Supply Chain**

*Q13:  Company A is selling items subject to the FDP rule to Company B, which will incorporate a percentage of Company A's items into products that are not subject to the FDP rule (or otherwise subject to the EAR).  Company A knows that some Company B products are destined*

3

*to a footnote 1 designated entity.  Does the FDP rule impose a license requirement on Company A?*

A13a:  If Company A knows that its items are destined for incorporation into Company B's products that will be sold to a footnote 1 designated entity, a license is required for the export from abroad, reexport, or transfer (in-country) of those items to Company B.

A13b:  If a percentage of Company A's items are destined for incorporation into a Company B's products that will be sold to a footnote 1 designated entity, a license is required for the export from abroad, reexport, or transfer (in-country)of the percentage of those items to Company B.

A13c:  If Company A knows that some percentage of the items it sells to Company B are destined for a footnote 1 entity but does not know which items, or what percentage of the items will be incorporated into those products, Company A should ask for that information from Company B.  If no information is provided by Company B, a license would be required for all of Company A's items that will be exported from abroad, reexported, or transferred (in-country)to Company B.

Q14: *A U.S. Company's integrated circuits are designed in the United States and manufactured and assembled by third party contractors outside of the United States.  The U.S. Company understands that the foreign third-party contractors (i.e., the semiconductor foundry and the outsourced semiconductor assembly and test (OSAT) assembly facility) use U.S.-origin equipment in the manufacture and assembly of those integrated circuits.  Are the integrated circuits covered foreign direct products when a footnote 1 designated entity is a party to the transaction?*

A14:  Yes, in two ways.  Because they were designed using U.S.-origin technology, the integrated circuits would be captured by paragraph (a) of the FDP rule.  In addition, because they were produced using a major component of a plant that is U.S.-origin, they would be captured by paragraph (b) of the FDP rule.  For purposes of this question, BIS assumes the technology and major component are specified by one of the ECCNs listed in the FDP rule.

*Q15:  Does the FDP rule impose a license requirement for the export of items from the United States to a party that produces items subject to the FDP rule?*

A15:  No, the FDP rule applies to foreign-produced items.  However, other provisions in the EAR may impose license requirements for the export of items from the United States.

**Prior Licenses**

Q16:  *If a supplier obtains a license for an FDP to be reexported, exported from abroad, or transferred (in-country) to a footnote 1 designated entity on the Entity List and notifies the recipient that the item is subject to the FDP rule and requires a license under footnote 1 of Supplement No. 4 to part 744 of the EAR, is the recipient required to submit its own license*

*application either to transfer the item directly, or to cover the transfer by a subsequent recipient, to a footnote 1 designated entity?*

A16:  The recipient can rely on the supplier's license.  The recipient must receive written confirmation of the license and any conditions relevant to the transaction prior to using it.  The recipient should notify any subsequent recipients of the license conditions and direct them to further notify the next recipient.

Q17:  *If a supplier notifies the next recipient in the production chain that the item being transferred is subject to the FDP rule and requires a license under footnote 1 of Supplement No. 4 to part 744 of the EAR, but the supplier has not informed the recipient that the supplier has already obtained a license for the transfer of the items to the recipient and end user, is the recipient required to submit a license application to Commerce to transfer the item to the end user, directly or by a subsequent recipient, to a footnote 1 designated entity?*

A17:  Yes.  The recipient must obtain a Department of Commerce license for such a transfer.  If a license is granted, the recipient should notify subsequent recipients and the footnote 1 designated entity of any license conditions.

Q18:  *If a supplier does not notify a subsequent recipient that the item is covered by FDP footnote 1 but the recipient knows the item is covered by paragraph (1) or (2) in footnote 1, is a Department of Commerce license required for the item's transfer, directly or by a subsequent recipient, to a footnote 1 designated entity?*

A18:  Yes.  If the recipient has knowledge, as defined in the EAR, that the item is covered by footnote 1 to Supplement No. 4 to part 744 of the EAR, the recipient may not transfer the item without a Department of Commerce license.

*Q19:  This question applies to general purpose products that are within the scope of paragraph (b) that are shipped to many customers outside the United States for further processing.  For products that were ordered by a footnote 1 designated entity but were not shipped before implementation of the August 2020 FDP rule, must the manufacturer obtain a license to ship the products to different sites that are part of the manufacturing process?  If an order comes in from a footnote 1 designated entity for products that are at some stage of completion does this mean movement of the products must stop until a license is obtained?*

A19:  If an item was not covered by the savings clause of the FDP rule, it will require a license for the export from abroad, reexport, or transfer (in-country) of that item from one party to another for further processing, regardless of its stage of production.

*Q20: If a distributor has a license to provide products to a footnote 1 designated entity, does the supplier need to get a separate license to cover the reexport or transfer of our products to the distributor?*

A20:  Because the distributor has a license to provide the final product to the footnote 1 designated entity, the license requirement of the FDP rule is fulfilled and does not apply to the

supplier.  The distributor should communicate the existence of a license to the suppliers of the product and the suppliers should ensure they receive written confirmation of the license and any conditions.

**Licensing Policy**

*Q21:  If BIS approves a license application for production equipment subject to the FDP rule, will a license for subsequent replacement parts and components for the repair of that equipment be approved?*

A21:  The license application for the initial export of the equipment should request a sufficient number of parts and spares.  Additionally, License Exception Servicing and Replacement of Parts and Equipment (RPL) may be available for replacement of parts and components to entities that are not listed on the Entity List if the transaction meets all other requirements of that license exception. *See* Supplement No. 4 to part 744 of the EAR for a list of entities on the Entity List and part 740 of the EAR for a description of license exceptions and their scope. Note that pursuant to § 744.11(a), license exceptions are not available for Entity List listed entities unless authorized in the Entity List entry for the entity that is party to the transaction. If License Exception RPL is not available for the transaction, subsequent applications for spare parts and components for the original exported equipment will be reviewed under the license review policy in place at the time the subsequent application is made.

*Q22:  Will license applications for non-telecom related items be reviewed under a case-by-case review or a presumption of denial?*

A22:  The presumption of denial licensing policy applies to all transactions covered by footnote 1 to Supplement No. 4 to part 744 of the EAR, except as described in the "Note to introductory paragraph of footnote 1."

**Item-Specific Questions**

*Q23:  Does the FDP rule apply to suppliers of cameras, screens, and earphones?  The camera, screen, and earphone products might have incorporated chips that are subject to the EAR.*

A23:  The license requirement in the FDP rule applies to any item that meets the criteria of footnote 1 to Supplement No. 4 to part 744 of the EAR.  The exporter will need to determine the ECCNs of those products if they have "knowledge" that the items are destined for a footnote 1 entity.

*Q24:  When producing a cellphone, if only U.S. software is used in the product engineering stage, will the cellphone be a foreign direct product and be subject to the EAR?*

A24:  The direct product would be whatever the U.S. software produces.  In most cases the direct product of the U.S. software would be the product design, which may be subject to paragraph (a) of the FDP rule.  In addition, the cellphone may be subject to the EAR pursuant to either the *de*

6

*minimis* rule in § 734.4 of the EAR or the other provisions of the foreign direct product rule in § 736.2(b)(3) of the EAR.

*Q25:  Would paragraph (b) to Supplement No. 4 to part 744 of the EAR apply where equipment classified under ECCNs 3B991 and 3B992 is used to test a chip that is a direct product of a design produced by a footnote 1 designated entity on the Entity List?  ECCNs 3B991 and 3B992 are not explicitly named in the ECCNs in paragraph (b) of the FDP rule, but U.S.-origin equipment that is 3B991 or 3B992 would be a direct product of 3D991 software and/or 3E991 technology such that paragraph (b) would apply, assuming all other criteria are met.*

A25:  The 3B991/3B992 equipment is a direct product of ECCNs 3D001, 3D991, 3E001, 3E002, 3E003, 3E991, 4D001, 4D993, 4D994, 4E001, 4E992, 4E993, 5D001, 5D991, 5E001, or 5E991 of the CCL.  Therefore, the  FDP license requirement would apply to FDPs tested on U.S.-origin 3B991/3B992 equipment, whether made in the United States or abroad, when there is "knowledge" that:

(1)  The foreign-produced item will be incorporated into, or will be used in the "production" or "development" of any "part," "component," or "equipment" produced, purchased, or ordered by any entity with a footnote 1 designation in the license requirement column of the Entity List (Supplement No. 4 to part 744 of the EAR); or

(2)  Any entity with a footnote 1 designation in the license requirement column of the Entity List is a party to any transaction involving the foreign-produced item, e.g., as a "purchaser," "intermediate consignee," "ultimate consignee," or "end-user."

**Savings Clause**

*Q26:  A foreign-produced item meeting paragraph (b) to Footnote 1 was in "production" prior to August 17, 2020 the effective date of the August 2020 FDP rule.  The item was exported from abroad to a non-sanctioned third party on or before September 14, 2020.  The third party performs additional activities meeting the definition of "production" without using any EAR controlled technology or production equipment and subsequently exports the fully "produced" item to a party on the Entity List that has a footnote 1 designation after September 14, 2020.  While the initial foreign-produced and exported item meets the scope of paragraph (b), subsequent "production" activities do not involve the use of any plant or major components of a plant that are the direct product of any controlled technology or software subject to the EAR and captured by paragraph (b).  Does the export from the third party after September 14, 2020 require a license?*

A26:  Shipments of foreign-produced items identified in paragraph (b) to footnote 1 to Supplement No. 4 to part 744 of the EAR that started production prior to August 17, 2020 may proceed as not being subject to the EAR, if applicable, or under the previous license exception eligibility or without a license if they were exported, reexported or transferred in-country prior to September 14, 2020, regardless of the subsequent production activities.

7