CAZ HASHEMI, State Bar No. 210239
STEPHEN B. STRAIN, State Bar No. 291572
BETTY CHANG ROWE, State Bar No. 214068
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: chashemi@wsgr.com
        sstrain@wsgr.com
        browe@wsgr.com

Attorneys for Defendants
Seagate Technology Holdings plc,
William D. Mosley, and Gianluca Romano

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re Seagate Technology Holdings plc, Securities Litigation* | CASE NO.: 3:23-cv-03431-RFL |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |
| | Hearing Date: March 4, 2025<br>Time:          10:00 a.m.<br>Courtroom:    15 – 18th Floor<br>Honorable Rita F. Lin |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................3

I.     THE AC FAILS TO PLEAD A MATERIAL MISSTATEMENT OR OMISSION ..........3

    A.     Plaintiffs' Renewed Concealment Theory Is Contradicted By The Pled Facts ........................................................................................................3

    B.     No Falsity As To Compliance-Related Statements ......................................4

    C.     No Falsity As To Statements "Downplaying" "Reliance On" Huawei HDD Sale ................................................................................................6

    D.     No Falsity As To Statements Regarding Revenue "Drivers" ................................6

II.    THE AC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER ........................7

    A.     The Plain Language Of The FDPR Does Not Support Scienter ...........................8

    B.     Plaintiffs Abandon Three Of The New Scienter Allegations And Fail To Show That The Remaining Two Allegations Raise A Strong Inference Of Scienter ........................................................................................................10

    C.     The Rehashed Scienter Allegations Do Not Raise A Strong Inference Of Scienter ........................................................................................................11

    D.     Plaintiffs Fail To Show That An Inference Of Malicious Intent Is As Cogent And Compelling As An Opposing Good Faith Innocent Inference ......................13

III.   THE AC FAILS TO PLEAD A VIOLATION OF RULE 10b-5(a) AND 5(c) ...............14

IV.    THE AC FAILS TO PLEAD LOSS CAUSATION .........................................................15

CONCLUSION ...................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bach v. Amedisys, Inc.*,
    2016 WL 4443177 (M.D. La. Aug. 19, 2016) ................................................................. 11

*Barrie v. Intervoice-Brite, Inc.*,
    397 F.3d 249 (5th Cir. 2005) ......................................................................................... 10

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ................................................................................................. 3, 13

*Bioscience Advisors, Inc. v. SEC*,
    2023 WL 163144 (N.D. Cal. Jan. 11, 2023) .................................................................. 11

*Brody v. Transitional Hosp. Corp.*,
    280 F.3d 997 (9th Cir. 2002) .................................................................................... 3, 13

*Carr v. Zosano Pharma Corp.*,
    2021 WL 3913509 (N.D. Cal. Sept. 1, 2021) .................................................................. 5

*City of Dearborn Height Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017) ......................................................................................... 10

*Costabile v. Natus Med. Inc.*,
    293 F. Supp. 3d 994 (N.D. Cal. 2018) ............................................................................ 6

*Damian v. A-Mark Precious Metals, Inc.*,
    2017 WL 6940515 (C.D. Cal. Aug. 28, 2017) ............................................................... 13

*Davoli v. Costco Wholesale Corp.*,
    854 F. App'x 116 (9th Cir. 2021) ................................................................................... 11

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*,
    270 F.3d 645 (8th Cir. 2001) ......................................................................................... 10

*Habelt v. iRhythm Techs., Inc.*,
    2022 WL 971580 (N.D. Cal. Mar. 21, 2023), *cert. denied*,
    2024 WL 4426565 (2024) ................................................................................................ 4

*Haideri v. Jumei Int'l Holding Ltd.*,
    2021 WL 4170791 (N.D. Cal. Sept. 14, 2021) ........................................................... 7, 10

*In re Apple Inc. Sec. Litig.*,
    678 F. Supp. 3d 1147 (N.D. Cal. 2023) ......................................................................... 14

*In re Cloudera, Inc. Sec. Litig.*,
    121 F.4th 1180 (9th Cir. 2024) ...................................................................................... 15

*In re Facebook, Inc. Sec. Litig.*,
    87 F.4th 934 (9th Cir. 2023), *cert. dismissed*,
    604 U.S. 4 (2024) ...................................................................................................... 4, 5

*In re Fibrogen, Inc. Sec. Litig.*,
   2022 WL 2793032 (N.D. Cal. Jul. 15, 2022) ...................................................................... 9

*In re Hansen Nat'l Corp. Sec. Litig.*,
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ............................................................................. 5

*In re Nektar Therapeutics Sec. Litig.*,
   34 F.4th 828 (9th Cir. 2022) ........................................................................................... 15

*In re SolarCity Corp. Sec. Litig.*,
   274 F. Supp. 3d 972 (N.D. Cal. 2017) .............................................................................. 6

*In re Toyota Motor Corp. Sec. Litig.*,
   2012 WL 3791716 (C.D. Cal. Mar. 12, 2012) ................................................................ 14

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
   2017 WL 1658822 (D.N.J. Apr. 28, 2017) ........................................................................ 5

*In re VeriFone Holdings, Inc. Sec. Litig.*,
   704 F.3d 694 (9th Cir. 2012) ........................................................................................... 11

*Jiangchen v. Rentech, Inc.*,
   2018 WL 4802058 (C.D. Cal. Jun. 7, 2018) ................................................................... 10

*Kar v. Patel*,
   2023 WL 8441482 (N.D. Cal. Oct. 12, 2023),
   *aff'd*, 2024 WL 4523811 (9th Cir. Oct. 18, 2024) ............................................................ 6

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) ......................................................................................... 15

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) ..................................................................................................... 7, 13

*Mazzaferro v. Aruba Networks Inc.*,
   2015 WL 456534 (N.D. Cal. Feb. 2, 2015), *aff'd sub nom.*
   *Par Inv. Partners, LP v. Aruba Networks Inc.*,
   681 F. App'x 618 (9th Cir. 2017) ...................................................................................... 4

*McPhail v. First Command Fin. Planning, Inc.*,
   2006 WL 8455139 (S.D. Cal. Jul. 27, 2006) ................................................................... 11

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ........................................................................................... 14

*Omnicare, Inc. v. Laborers Dist. Council Constr. Industry Pen. Fund*,
   575 U.S. 175 (2015) ..................................................................................................... 7, 8

*Or. Public Emps. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014) ............................................................................................. 4

*Peltz v. Polyphase Corp.*,
   36 F. App'x 316 (9th Cir. 2002) ...................................................................................... 11

*Plaskin v. Newsight Reality, Inc.*,
   2020 WL 1651995 (C.D. Cal. Feb. 6, 2020) .............................................................. 13, 14

*Prodanova v. H.C. Wainwright & Co.*,
    993 F.3d 1097 (9th Cir. 2021)................................................................................................7

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011)..................................................................................................5

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) ..................................................................................................................9

*SEC v. Brincat*,
    2001 WL 1662099 (N.D. Ill. Dec. 6, 2001) ........................................................................14

*SEC v. Platforms Wireless Int'l Corp.*,
    617 F.3d 1072 (9th Cir. 2010)..............................................................................................14

*Shi v. Ampio Pharma, Inc.*,
    2020 WL 5092910 (C.D. Cal. Jun. 19, 2020) ............................................................... 10, 14

*Simpson v. AOL Time Warner Inc.*,
    452 F.3d 1040 (9th Cir. 2006), *vacated on other grounds by*
    *Simpson v. Homestore.com*, 519 F.3d 1041 (9th Cir. 2008) .............................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ..............................................................................................................13

*Todd v. STAAR Surgical Co.*,
    2016 WL 6699284 (C.D. Cal. Apr. 12, 2016)........................................................................5

*United States ex rel. McGrath v Microsemi Corp.*,
    690 F. App'x 551 (9th Cir. 2017).........................................................................................10

*United States ex rel. Ormsby v. Sutter Health*,
    444 F. Supp. 3d 1010 (N.D. Cal. 2020) .................................................................................9

*United States ex rel Schutte v. SuperValu Inc.*,
    598 U.S. 739 (2023) ................................................................................................................9

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018).................................................................................................10

*Zamir v. Bridgeport Ed., Inc.*,
    2018 WL 1258108 (S.D. Cal. Mar. 12, 2018).......................................................................10

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)...................................................................................................9

**RULES**

15 C.F.R. § 772.1 ............................................................................................................... 1, 8

85 Fed. Reg. 51596 ...................................................................................................................8

**INTRODUCTION**

The Opposition ("Opp.") is the epitome of repeat, retreat, and reject. At its core, the Opposition merely *repeats* the same arguments Plaintiffs made before, most for the ***fifth time***. There is not a single material argument or allegation in the Opposition that Plaintiffs have not previously asserted in the dismissed CC[1] (ECF No. 68), Plaintiffs' first opposition (ECF No. 82), the March 26, 2024 hearing (ECF No. 94) and/or the AC (ECF No. 100). Plaintiffs *retreat*, abandoning two revenue-related statements and many scienter allegations, including new ones pled just four months ago in the AC. Plaintiffs also *reject* the Court's prior findings and continue to pretend that Seagate's HDD sales to Huawei "***had already violated*** export control laws" at the time of the challenged statements (Opp. at 24 (emphasis in original)) and that Defendants did not publicly acknowledge Seagate's continuing commercial relationship with Huawei after the promulgation of the FDPR (*id.* at 5 n.5).

Despite Plaintiffs' tactics, a glaring fatal flaw remains: the absence of *contemporaneous facts* from confidential witnesses, internal documents, or internal conversations showing Defendants' knowledge of noncompliance and that their interpretation of the FDPR was incorrect at the time of the statements. The mere fact that BIS later concluded that Seagate's interpretation was incorrect is insufficient to plead securities fraud. Indeed, BIS did ***not*** charge Seagate with a "knowing" violation. Like in the CC, Plaintiffs fail to plead facts in the AC showing Defendants' analysis of the FDPR, how that analysis was inconsistent with information known to Defendants at the time, and that Defendants knew or recklessly disregarded that their analysis was incorrect.

The plain language of the regulation does not save the AC. The "any stage of production" language upon which Plaintiffs rely pertains to the regulatory definition of "essential" as it relates to manufacturing equipment (*see* ¶¶ 40, 46, 49), but for the FDPR to apply, the foreign produced item also must be the "direct product" of that equipment, as the rule's name implies. As this Court observed, "direct product" is defined as "[t]he *immediate product* (including processes and services) produced directly by the use of technology or software." 15 C.F.R. § 772.1. The

---

[1] This Reply uses the same abbreviations and conventions as in the Defendants' Opening Brief ("Op. Br."; ECF No. 104).

definition of "direct product," which Plaintiffs continue to ignore, ***does not reference stages of production***. Given this definition and BIS guidance that the incorporation of a part subject to the FDPR "does not necessarily make the larger foreign product" subject to the FDPR (Ex. 17 at 3), Plaintiffs fail to show that Defendants' focus on the last stage of production was unreasonable, let alone so patently unreasonable to sufficiently plead a Section 10(b) claim under the PSLRA.

*No Falsity.* The Opposition confirms the AC's failure to plead a materially false statement. It ignores the deficiencies identified by the Court, repeating the same unsuccessful arguments regarding the challenged compliance-related statements, the revenue "driver" statements, and the purported omission of Huawei as a major contributor of revenue in Seagate's Q3 2021 Form 10-Q. Plaintiffs retreat and do not address the September 14, 2020 and October 22, 2020 statements concerning purported reliance on Huawei sales. In an effort to conjure up falsity, the Opposition proclaims, "Defendants took deliberate steps to conceal" Seagate's business relationship with, and "[i]llegal [s]ales" to, Huawei (Opp. at 1, 9), a theory Plaintiffs *disclaimed* in their first opposition. *See* ECF No. 82 at 12 ("Plaintiffs do not allege Defendants concealed that Seagate might continue shipping HDDs to Huawei[.]"). Plaintiffs' on again/off again concealment theory still fails because the market was aware that Seagate was continuing to sell HDDs to Huawei without a license after the promulgation of the FDPR and Seagate had not been found noncompliant at the time. These facts—established by the AC itself—doom Plaintiffs' case.

*No Scienter.* Likewise, the AC contains not a scintilla of well-pled facts that raise a strong inference that Defendants knowingly or recklessly misinterpreted the FDPR at the time the statements were made. The Opposition abandons three of the five new scienter allegations in the AC: the sale and leaseback of real estate, Item 101(c)(1)(i) of Regulation S-K, and Seagate's accounts receivable disclosures. Plaintiffs' remaining two new allegations—Seagate's silence during the agency rulemaking process and "red flag indicators" in BIS regulations—are legally untenable, as the former is based on the irrelevant administrative waiver doctrine and the latter speaks to a negligence standard that is inapplicable to this Section 10(b) case. Plaintiffs have scraped the bottom of the proverbial barrel and come up with nothing.

Left with their old deficient allegations, Plaintiffs repeat the same bases for scienter the

Court already found inadequate, such as the Congressional inquiry, alleged "warnings" (a supplier letter, law firm alerts, competitors' actions), the penalty size, etc.  The supposed "significant, new allegations" offered to buttress the old (Opp. at 9-10) are not new, are not well pled, and do not move the scienter needle.  Specifically, the dollar amount of HDDs sold to Huawei after the Senate Commerce Committee letter was ascertainable from paragraph 90 of the CC and does not raise an inference of scienter.  The allegation that Seagate was setting up foreign subsidiaries to resume shipments to Huawei is sheer speculation.  And Plaintiffs' viewpoint that Defendants "stopped answering questions" is not germane.  "Silence, absent a duty to disclose, is not misleading under Rule 10b-5."  *Basic Inc. v. Levinson*, 485 U.S. 224, 239, n.17 (1988).  Because the market was aware that Seagate continued its commercial relationship with Huawei after the implementation of the FDPR, Defendants' alleged silence did not create an impression that materially differed from reality at the time.  *See Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

The parties have expended significant time, resources, and effort litigating the same tiresome allegations and deficiencies.  Even on their third complaint, Plaintiffs do not come close to pleading falsity, scienter, a deceptive scheme, and loss causation to state a Section 10(b) claim. The Court should dismiss again, this time with prejudice.

**ARGUMENT**

**I.    THE AC FAILS TO PLEAD A MATERIAL MISSTATEMENT OR OMISSION**

**A.  Plaintiffs' Renewed Concealment Theory Is Contradicted By The Pled Facts**

Plaintiffs' overarching theory—that "Defendants took deliberate steps to conceal Seagate's" business relationship with, or "[i]llegal [s]ales" to, Huawei (Opp. at 1, 9)—fails for the same reasons it did previously:  the AC itself establishes there was no concealment and that Seagate's commercial relationship with Huawei was publicly known during the relevant period.

Like its dismissed predecessor, the AC repeatedly avers that on the first day of the Class Period, in response to an analyst question about the FDPR, the CFO informed investors of Seagate's belief that there were no restrictions, limitations, or license requirement "***to continue to ship to Huawei***."  ¶¶ 2, 51, 167-169.  Analysts' questions during the Class Period reflected their belief that Seagate was continuing to ship to Huawei.  ¶¶ 51, 53.  In October 2020, Wedbush

analysts reported their positive expectation of Seagate's performance, "***helped in part by Huawei orders***." ¶ 55.  In February 2021, Deutsche Bank analysts observed, Seagate "***has not stopped shipping to Huawei***." Ex. 8 at 2.  In March 2021, Wedbush analysts stated, "***it has been common knowledge within the storage industry that Seagate continued shipping parts to Huawei post the U.S. restrictions implemented in August***" and "***Seagate's legal team likely interpreted U.S. restrictions differently than its peers.***"  *Id*.  Plaintiffs' counsel acknowledged at the March 2024 hearing, "there were some in the market saying they're [Seagate] still selling in [sic] Huawei, there were some in the market saying, well, they don't need a license." Hrg. Tr. at 26:24-27:1.  In short, as this Court found, Seagate's continuing commercial relationship with Huawei after the promulgation of the FDPR was known to the market.  *See* ECF No. 96 at 10.

Where "the market has already 'become aware of the allegedly concealed information' . . . the market 'will not be misled.'"  *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 948 (9th Cir. 2023); *see Or. Public Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014) (omission theory failed "because the Defendants clearly disclosed material information"); *Mazzaferro v. Aruba Networks Inc.*, 2015 WL 456534, at *2 (N.D. Cal. Feb. 2, 2015) (rejecting theory that Aruba concealed threat from competitor Cisco where "it was no secret that Cisco was a formidable competitor"), *aff'd sub nom. Par Inv. Partners, LP v. Aruba Networks Inc.*, 681 F. App'x 618 (9th Cir. 2017).  Accordingly, the AC should be dismissed in its entirety.  *See Habelt v. iRhythm Techs., Inc.*, 2022 WL 971580, at *20 (N.D. Cal. Mar. 21, 2023) (dismissing complaint; "[t]he theory of fraud underlying the entire complaint fails as a matter of fact and law").

**B.  No Falsity As To Compliance-Related Statements**

Buried on page 23 of their 25-page Opposition is Plaintiffs' response to the core of this case—the compliance statements.  The Opposition ignores the Court's ruling and fails to address the inadequacies of the allegations identified by the Court.

***Compliance Statements.***  As Defendants pointed out, the Court held that the compliance statements were not false or misleading because (1) "[a]t the time Defendants made the challenged statements about compliance, Seagate had not been found to be noncompliant with the FDPR" and, (2) the "factual allegations do not sufficiently support that Defendants knew their

interpretation of the FDPR was erroneous at the time the challenged statements were made." ECF No. 96 at 3. In response, Plaintiffs dismiss the Court's first finding as "irrelevant and incorrect," stating, "[t]hat BIS had not taken action against Seagate at the time of the misstatements is both irrelevant and incorrect." Opp. at 24. As to the second, Plaintiffs offer dicta from an out-of-circuit case that "[f]alsity does not require confidential witnesses or internal documents."[2] Opp. at 23.

It is Plaintiffs who are incorrect. The law is clear. Compliance statements are not false or misleading where the company believed it was in compliance and had not been found to be noncompliant at the time the statement was made. *See* ECF No. 96 at 3; *see also* Op. Br. at 7, n.7 (citing cases); *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 693 (9th Cir. 2011) ("'liability cannot be imposed on the basis of subsequent events.'").[3] And courts within the Ninth Circuit dismiss securities claims where the allegations were "all based on publicly-filed documents—and not, as is the case in many securities fraud cases, on the statements of confidential witnesses and/or employees and former employees." *In re Hansen Nat'l Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007); *see Carr v. Zosano Pharma Corp.*, 2021 WL 3913509, at *10 (N.D. Cal. Sept. 1, 2021) (complaint without allegations from confidential witnesses "lack[ed] notable features that tend to be 'hallmarks of a potentially viable securities claim.'").

***Risk Factors and SOX Disclosures.*** The Opposition's response to the risk factor statements underscores the false premise on which this case is based. Plaintiffs continue to insist that the risk statements omitted "that Seagate's sales of HDDs to Huawei ***had already violated*** export control laws[.]" Opp. at 24 (emphasis in original). Seagate, however, had not been found noncompliant at the time. ECF No. 96 at 3. Plaintiffs' response regarding the SOX certifications

[2] *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2017 WL 1658822 (D.N.J. Apr. 28, 2017), was a restatement case where scienter was adequately pled based on the totality of allegations that the individual defendants had "direct oversight" over a price gouging scheme and other deceptive practices, were aware of the company's use of a secret pharmacy network, made "key admissions," and whose "unusual compensation structure" tied to increasing the stock price was "[t]he driving motive for facilitating the scheme." *Id.* at *3, *8. No similar facts are alleged here.

[3] Even Plaintiffs' case supports this settled legal principle. *See Todd v. STAAR Surgical Co.*, 2016 WL 6699284, at *2, *9-10 (C.D. Cal. Apr. 12, 2016) (compliance statement was misleading because it did not disclose the FDA's *prior* findings of regulatory violations). Plaintiffs' reliance on *Facebook*, 87 F.4th at 949, is misplaced because that discussion was in the context of risks that had already materialized. Here, Plaintiffs fail to plead the fruition of risks. ECF No. 96 at 3-4.

is equally wanting.  The Opposition asserts that Plaintiffs must allege facts explaining why the declarants knew the financial reporting was false when made, and then proclaims that "Plaintiffs have done so."  Opp. at 25.  This conclusory response fails to address the two deficiencies identified by the Court:  that Plaintiffs' allegations (i) improperly rested on the assumption that Defendants had contemporaneous knowledge of the FDPR violation, and (ii) fail to allege how Seagate's internal controls over financial reporting were deficient.  *See* ECF No. 96 at 4.

### C.  No Falsity As To Statements "Downplaying" "Reliance On" Huawei HDD Sales

Plaintiffs waived or abandoned their challenges to the September 14, 2020 and October 22, 2020 statements regarding Seagate's purported "reliance on" Huawei sales, for failure to address them in the Opposition.[4]  And Plaintiffs merely repeat the same old arguments regarding the 3Q 2021 Form 10-Q.  *Compare* Opp. at 20 (arguing an alleged GAAP violation for "failing to disclose that Huawei sales contributed more than 10% of revenue" that quarter and materiality), *with* ECF No. 82 at 15, 19 (same) and Hrg. Tr. at 24:22-24 (arguing same alleged GAAP violation).  Those arguments fail for the same reasons as before.  *See* ECF No. 72 at 18; ECF No. 84 at 9-10; ECF No. 96 at 4-6.  And the claim that the omission of Huawei sales left "'a misimpression about the health of the company'" (Opp. at 19) is refuted by Plaintiffs' allegation that Seagate's HDD revenue *increased after* it stopped selling HDDs to Huawei.  *See* ¶ 59, Fig. 2.

### D.  No Falsity As To Statements Regarding Revenue "Drivers"

Like the other statements, the Opposition does not address the inadequacies of the revenue driver statements identified by the Court.  Plaintiffs still fail to show that the identified legitimate factors "were not actually drivers of Seagate's revenue or less consequential than sales to Huawei" (ECF No. 96 at 6-7), still fail to sufficiently allege Seagate's knowledge of the alleged illegality, and still do not allege that Seagate privately credited the Huawei sales for Seagate's performance.  *Id.* at 7 & n.2.  Unable to point to any curative allegations, Plaintiffs blindly recycle the same

---

[4] *See*, *e.g.*, *Kar v. Patel*, 2023 WL 8441482, at *3 (N.D. Cal. Oct. 12, 2023), *aff'd*, 2024 WL 4523811 (9th Cir. Oct. 18, 2024) (plaintiffs were "deemed to concede" an argument on which their opposition was "silent and d[id] not respond to"); *Costabile v. Natus Med. Inc.*, 293 F. Supp. 3d 994, 1014 (N.D. Cal. 2018) ("Plaintiff has abandoned this theory by failing to respond to Defendants' arguments regarding it in his opposition to the motion to dismiss."); *In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 991 (N.D. Cal. 2017) (finding plaintiffs' abandonment of claims based on guidance statements for failure to argue the statements in the opposition).

arguments, to no avail. *Compare* Opp. at 21 (arguing falsity because Seagate's financial results would have been below the midpoint of the guidance range without Huawei sales in certain quarters), *with* ECF No. 82 at 15, n.9 (same); *compare* Opp. at 21-22 (arguing falsity because Seagate attributed its performance to lawful factors without disclosing the allegedly illegal Huawei sales), *with* ECF No. 82 at 14 & n.7 (same) and Hrg. Tr. at 41:3-19 (same).

Repetition aside, the Opposition exposes the baseless nature of Plaintiffs' claims. According to Plaintiffs, "Seagate's statements about its revenue drivers were misleading because investors *would want to know* 'how the company was growing and derived its revenue.'" Opp. at 21. Plaintiffs' "would want to know" standard is not the standard for disclosure. The Supreme Court has "emphasi[zed] that § 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information" investors may want to know. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). Disclosure is required "only when necessary 'to make statements made, in the light of the circumstances under which they were made, not misleading.'" *Id.* The challenged statements attributing Seagate's performance to certain factors were not misleading when made. *See* Op. Br. at 11-13; ECF No. 72 at 19; ECF No. 84 at 10-11; ECF No. 96 at 6-7. The Court should again dismiss all claims based on the revenue driver statements.[5]

## II.     THE AC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

Plaintiffs do not come close to carrying their "high burden" of pleading a strong inference that Defendants knew or recklessly did not know that Seagate was not in compliance with the FDPR at the time of the statements. *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1108 (9th Cir. 2021); *see Haideri v. Jumei Int'l Holding Ltd.*, 2021 WL 4170741, at *19 n.19 (S.D. Cal. Sept. 14, 2021) (plaintiff must "plead scienter with a high degree of particularity."). Plaintiffs abandon many of their scienter allegations (new and old), the remaining new allegations are easily refuted, and the remaining old allegations are still deficient. In the end, Plaintiffs still do not allege contemporaneous facts showing that Seagate's interpretation of the FDPR did not "fairly align[] with the information in [Seagate's] possession at the time." *Omnicare, Inc. v. Laborers Dist.*

---

[5] Plaintiffs' materiality argument (Opp. at 19-20) fails for these reasons and the reasons discussed in Section I.C. above.

*Council Constr. Industry Pen. Fund*, 575 U.S. 175, 188-89 (2015).

### A.  The Plain Language Of The FDPR Does Not Support Scienter

At the March 2024 hearing, the Court indicated that the plain language of the regulations "potentially provides the only possible hook for this claim," especially since "the additional facts…are not that compelling in terms of an inference of scienter."  Hrg. Tr. at 19:7-9, 17-20.  Subsequently, in dismissing the CC, the Court held that Seagate's interpretation of the FDPR was not so obviously unreasonable, based on the regulatory definition of "direct product."  ECF No. 96 at 8-9.  The AC and Opposition ignore the definition of "direct product."[6]  Instead, Plaintiffs assert for the *fifth time* that by its plain language, the FDPR applies to equipment that is involved in "*any* of the production stages," not just the "last stage."  Opp. at 12 (emphasis in original).[7]  Plaintiffs' fixation on the "any of the production stages" language is misplaced.

The AC shows that the "any of the production stages" language pertains to the definition of "essential" under the FDPR.  ¶¶ 40, 46, 49; *see* Opp. at 12.  The issue here is not limited to whether the equipment was "essential."  The foreign produced item also must be the "direct product" of that equipment.  *See* ¶ 39; 15 C.F.R. § 772.1; 85 Fed. Reg. 51596 (Ex. 6).  The EAR defines "direct product" as "[t]he ***immediate product*** (including processes and services) produced directly by the use of technology or software."  15 C.F.R. § 772.1.  Plaintiffs' plain language argument crumbles, as ***the regulatory definition of "direct product" does not reference stages of production***.  In short, Plaintiffs fail to show that Defendants' natural focus on the last stage of the production process, in interpretating the FDPR, was patently unreasonable.

No doubt aware of the tenuous nature of their plain language argument, Plaintiffs assert that "even if a regulated party adopts a 'reasonable' interpretation of an 'ambiguous' statute, it can nonetheless be deemed liable for knowingly making a false statement if it 'had been warned away

---

[6] Rather than engage with the definition of "direct product," Plaintiffs claim that the basis for Seagate's interpretation "shifted over time." Opp. at 14 n.10.  Not so.  Defendants have consistently argued that the "EAR, Federal Register, and BIS guidance indicated that the new restrictions applied only to a 'direct product.'" ECF No. 72 at 12 & n.5 (citing 15 C.F.R. § 772.1).  Counsel expounded on these points at the March 2024 hearing.  Hrg. Tr. at 6:8-9:9.

[7] *See also* ECF No. 68 ¶¶ 38, 40-41, 63; ECF No. 82 at 8; Hrg. Tr. at 16:11-19, 17:7-8, 47:15-24; ¶¶ 3, 40, 46, 49.

from that interpretation' by authoritative agency guidance." Opp. at 11 (quoting *United States ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010, 1017 (N.D. Cal. 2020)). Even assuming the applicability of *Ormsby*,[8] Plaintiffs do not allege that Seagate was "warned away" by BIS from its interpretation of the FDPR. Rather, the "authoritative agency guidance" *supported* Seagate's interpretation. *See* Ex. 6 (BIS confirmed, in response to concerns about deep supply and design chains, that the FDPR applied to the "direct product."); Ex. 17 at 3 (December 2020 guidance stating that "incorporation of a part that is subject to the EAR pursuant to the [Entity List] FDP rule *does not necessarily make the larger foreign product subject to the EAR*.").[9] As the Supreme Court counseled, where "the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007).[10] Yet that is precisely what Plaintiffs seek to do here.

Grasping for straws, Plaintiffs evoke an argument common to the plaintiffs' bar: that the relevant issue (here, whether Seagate's misinterpretation of the FDPR was reasonable or in good faith) "is a fact-intensive inquiry" inappropriate for resolution on a Rule 12(b)(6) motion. Opp. at 11. Plaintiffs' own cases belie this claim.[11] Under the PSLRA, in determining the sufficiency of scienter allegations, "[a] court *must* compare the malicious and *innocent* inferences cognizable from the facts pled in the complaint[.]" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). In so doing, the Ninth Circuit and other courts routinely make determinations

[8] *Ormsby* involved claims under the False Claims Act ("FCA"). Plaintiffs' other case, also a FCA case, was vacated. *See United States ex rel Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023).

[9] Plaintiffs try to skirt this guidance by arguing that the violation and BIS's action "have nothing to do with the *'de minimus'* provision[.]" Opp. at 12-13. Defendants, however, do not rely on the *de minimus* rule. Rather, the relevant portion of the December 2020 guidance is the first clause of BIS's answer to the FAQ, which interpreted the FDPR and conveyed that the larger item must be evaluated to determine whether it is subject to the FDPR.

[10] In *Safeco*, the Supreme Court held that Safeco's "misreading of the statute was not reckless" under the Fair Credit Report Act because Safeco's reading "was not objectively unreasonable" given the "dearth of guidance and the less-than-pellucid statutory text." 551 U.S. at 70.

[11] *See In re Fibrogen, Inc. Sec. Litig.*, 2022 WL 2793032, at *20-21 (N.D. Cal. Jul. 15, 2022) (rejecting on a 12(b)(6) motion the argument that defendants' interpretation of clinical test data was honest because "the allegations of manipulation" of data were closer to false representations than to "reasonable belief"); *Ormsby*, 444 F. Supp. 3d at 1071-72 (adjudicating the reasonableness of defendant's interpretation of a Medicare-related regulation on a 12(b)(6) motion).

of reasonableness or good faith on a motion to dismiss. *See*, *e.g.*, *Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) (affirming dismissal of § 10(b) complaint; "facts do not give rise to an inference of scienter that is at least as compelling as the inference of an honest mistake"); *City of Dearborn Height Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 621 (9th Cir. 2017) ("the more compelling inference is that Defendants made a good faith but mistaken determination in its goodwill valuations"); *Haideri*, 2021 WL 4170791, at *18 (the more plausible inference was that defendants "concluded, on the basis of Houlihan's financial analysis and in good faith, that the buyout was fair"); *Shi v. Ampio Pharma, Inc.*, 2020 WL 5092910, at *6 (C.D. Cal. Jun. 19, 2020) (the more compelling inference was that defendant "tried in good faith to design a successful Phase 3 pivotal trial, yet failed to obtain the FDA's approval to use the trial"); *Zamir v. Bridgeport Ed., Inc.*, 2018 WL 1258108, at *8 (S.D. Cal. Mar. 12, 2018) ("the more compelling inference . . . is that Defendants made a good faith but mistaken attempt to account for students with and without financial aid.").[12]

Given BIS guidance at the time and the less than clear regulatory language, Seagate's interpretation of the FDPR as applying to direct products evaluated at the last stage of the manufacturing process and not the entire process (or an earlier stage), was not unreasonable. *See*, *e.g.*, *Jiangchen v. Rentech, Inc.*, 2018 WL 4802058, at *9 (C.D. Cal. Jun. 7, 2018) (the complaint must allege that the accounting error was "nonsensical" on its face and defied "common sense").

### B. Plaintiffs Abandon Three Of The New Scienter Allegations And Fail To Show That The Remaining Two Allegations Raise A Strong Inference Of Scienter

Of the five scienter allegations Plaintiffs heralded as "new," Plaintiffs abandon three—(i) Seagate's sale and leaseback of certain real estate; (ii) Item 101(c)(1)(i) of Regulation S-K; and

---

[12] *Accord United States ex rel. McGrath v Microsemi Corp.*, 690 F. App'x 551, 552 (9th Cir. 2017) (affirming dismissal on 12(b)(6) motion; "the [false claims act] complaint cannot plead facts sufficient to support an inference that [defendant] knew it had failed to comply with [the International Traffic in Arms Regulations] at the time of the representation because [defendant's] good faith interpretation of the term 'disclose' in [regulation] at that time was reasonable"). Plaintiffs' two out-of-circuit cases are inapt. In *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 258-59 (5th Cir. 2005), the scienter allegations for alleged revenue recognition fraud were supported by confidential witnesses and expert opinion. No such allegations are pled here. In *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 658-59, 661 (8th Cir. 2001), the Eighth Circuit criticized the Ninth Circuit standard for pleading scienter and based scienter on "an unusual, heightened showing of motive to commit fraud."

(iii) Seagate's disclosures of accounts receivables in its 2021 Form 10-K—by failing to address them in the Opposition. *See* n.4, *supra*. This retreat alone underscores the absence of scienter.

The remaining two new allegations are plainly untenable. The Opposition cites not a single case to support the far-fetched proposition that Seagate's silence during the agency rulemaking process has any nexus to scienter months later. Instead, Plaintiffs double down on "waiver" under the administrative waiver doctrine (Opp. at 14),[13] which is inapplicable because Seagate is not challenging agency action in this case. And Plaintiffs ignore Ninth Circuit precedent that defeats their "red-flag indicators" allegations. *See Davoli v. Costco Wholesale Corp.*, 854 F. App'x 116, 117 n.1 (9th Cir. 2021) (scienter cannot be pled by alleging "red-flags" "because such a standard is effectively a negligence standard"). Plaintiffs' out-of-circuit cases (Opp. at n.11) fail in the face of *Davoli*.[14] In short, Plaintiffs have no new allegations that raise any inference of scienter, let alone a strong one. The old allegations fare no better.

**C. The Rehashed Scienter Allegations Do Not Raise A Strong Inference Of Scienter**

Plaintiffs repeat or repackage the same ineffective arguments regarding their old scienter allegations. The Opposition also fails to address Defendants' arguments that allegations of senior management's involvement and customer instructions are insufficient to plead scienter, and therefore, abandons those allegations. *See* n.4, *supra*.

***Same "Warnings," Magnitude, Penalty Size, SOX Certifications, Executive Departures, and Core Operations.*** The Opposition adds nothing new to Plaintiffs' recycled arguments that the same supplier letter, same competitors' actions, same law firm alerts, same penalty size,[15] same

---

[13] Plaintiffs cite *Bioscience Advisors, Inc. v. SEC*, 2023 WL 163144, at *1, *3 (N.D. Cal. Jan. 11, 2023), which, unlike this case, involved a challenge to an agency action by a private party.

[14] In addition, *Peltz v. Polyphase Corp.*, 36 F. App'x 316, 319 (9th Cir. 2002), stands for the unremarkable proposition that courts can consider circumstantial evidence, including "red flags," to determine the existence of a triable issue of fact in adjudicating a *motion for summary judgment*.

[15] None of Plaintiffs' cases (Opp. at 16) based scienter on the size of a penalty or an agency's charging instructions. *See In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 708-09 (9th Cir. 2012) (scienter pled on allegations that CEO and CFO reviewed internal reports and provided accounting adjustments in "the precise amounts [CEO] and [CFO] had identified as necessary to hit earnings targets"); *Bach v. Amedisys, Inc.*, 2016 WL 4443177, at *12-13 (M.D. La. Aug. 19, 2016) (defendants touted the compliance program when contradictory information was available to them); *McPhail v. First Command Fin. Planning, Inc.*, 2006 WL 8455139, at *3-4 & n.5 (S.D. Cal. Jul. 27, 2006) (scienter was "powerfully augment[ed]" by a NASD order that reflected "contemporaneous reports or data, available to the party, which contradict[ed] the statement.").

SOX certifications, same executive departures, and core operations theory raise a strong inference of scienter.  *See* Opp. at 13-17; *see also* Hrg. Tr. at 16:20-17:1-6, 17:20-18:5, 22:15-19; ECF No. 82 at 16-19.  These allegations remain "weak" and "do not provide an adequate basis to draw a strong inference that Defendants had the required state of mind."  ECF No. 96 at 9.

*Same Congressional Inquiry.*  Plaintiffs repeat that Seagate "stonewalled Congressional requests for information."  *Compare* Opp. at 10, *with* ECF No. 68, ¶¶ 6, 81-84, 119; ECF No. 82 at 17, Hrg. Tr. at 17:9-10, 18:13-14.  The Court already found these allegations inadequate.  ECF No. 96 at 9.  Plaintiffs point again to statements in the Commerce committee report that Seagate *may* plan to resume shipments to Huawei through a subsidiary and "*it appears* that Seagate acted knowingly."  Ex. 8 at 5-6; Opp. at 10, 16-17; Hrg. Tr. at 17:15-19, 33:16-21.  These conclusory statements are highly speculative and fall far short of satisfying the PSLRA's exacting pleading requirements. Op. Br. at 19-20.  Plaintiffs cite *no* cases holding that equivocal conclusory language in a report on an unfinished investigation raises a strong inference of scienter.  As Plaintiffs' counsel acknowledged, the report reflects "the *Senate committee's* interpretation" of the FDPR— not BIS's or Seagate's.  Hrg. Tr. at 17:18-19.  The fact that BIS, the authoritative body to interpret the FDPR, did *not* charge Seagate with a "knowing" violation dispels any inference of scienter.

*Repackaged Allegations of Concealment Fail.*  Although the Opposition claims the AC "adds significant, new allegations" of concealment (Opp. at 9-10), none are new.  *First*, the dollar amount of Seagate's HDD sales to Huawei after the May 2021 Commerce Committee letter (Opp. at 10) was ascertainable from the CC.  *See* ECF No. 68 ¶ 90 (alleging the total amount of Huawei sales for the quarter ending July 2, 2021 through the end of the Class Period).  Moreover, Plaintiffs fail to cite any cases holding that bona fide sales raise a strong inference of scienter.

*Second*, the allegation that Seagate secretly "expanded its commercial partnership with Huawei" through the execution of partnership agreements and credit line extensions to Huawei (Opp. at 10) permeated the dismissed CC and was raised in Plaintiffs' first opposition and at oral argument.[16]  These allegations fail to raise a strong inference of scienter because, as shown above,

---

[16] *See* ECF No. 68, ¶¶ 4, 6, 9, 71-76, 79-80, 108-109, 119, 122, 128-129; ECF No. 82 at 12; Hrg. Tr. at 25:10-13.

Seagate publicly acknowledged its continuing relationship with Huawei after the promulgation of the FDPR and there are no allegations that Seagate disclaimed that relationship.  Moreover, Seagate did not have a duty to disclose specific agreements with any customers, including Huawei, particularly since Seagate informed the market that it did not provide information about individual customers.  *See* ECF No. 96 at 7; ¶ 213; Ex. 4 at 12; Ex. 5 at 15; *Matrixx*, 563 U.S. at 44.

*Finally*, that Defendants supposedly "stopped answering questions" about whether Seagate was continuing to ship to Huawei after September 2020 (Opp. at 10; *see* Hrg. Tr. at 24:1-3, 13-14) adds nothing to the scienter analysis.  Again, "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5."  *Basic*, 485 U.S. at 239 n.17.  Because the market was aware that Seagate continued its commercial relationship with Huawei after the FDPR's implementation, Defendants' alleged silence did not create an impression that materially differed from reality at the time.  *See Brody*, 280 F.3d at 1006.  Plaintiffs do not cite a single case for the novel proposition that Seagate had a duty to repeat accurate statements previously made or a duty to answer analyst questions to Plaintiffs' liking.  Seagate did not.  *See Matrixx*, 563 U.S. at 45 ("companies can control what they have to disclose under these provisions by controlling what they say to the market.").

### D. Plaintiffs Fail To Show That An Inference Of Malicious Intent Is As Cogent And Compelling As An Opposing Good Faith Innocent Inference

In totality, the dearth of well-pled allegations does not raise an inference of fraudulent or reckless intent that is as cogent and compelling as the opposing inference that Defendants innocently misinterpreted the FDPR.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  This is not a close call.  Plaintiffs' two responses do not make up for their abject failure to plead contemporaneous facts of Defendants' scienter at the time of the statements.

*First*, Plaintiffs' response that a good faith interpretation "is beside the point" and presents a factual question (Opp. at 18) is without merit for the reasons discussed in Section II.A. above.  Also, Plaintiffs' cases are inapt; they concern "good faith" as a substantive affirmative defense whereas the issue here is the sufficiency of Plaintiffs' allegations under *Tellabs* and the PSLRA.[17]

---

[17] Plaintiffs' cases suffer from additional infirmities. *Damian v. A-Mark Precious Metals, Inc.*, 2017 WL 6940515 (C.D. Cal. Aug. 28, 2017), and *Plaskin v. Newsight Reality, Inc.*, 2020 WL
(continued...)

*Second*, Plaintiffs peddle the same senseless scienter theory posited before:  that Seagate was hoping to secure a monopoly over Huawei sales and assumed that the monopoly would offset any regulatory risk.  *Compare* Opp. at 17-18, *with* ECF No. 82 at 19 & n.14.  That theory still does not explain why Seagate would publicly acknowledge its continuing relationship with Huawei if it believed its sales to Huawei were illegal.  ECF No. 96 at 10; *see Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020); *Shi*, 2020 WL 5092910, at *5-6 (scienter allegations failed to explain why defendants would "essentially sabotage then [sic] own study").  Why would Seagate sabotage its purported monopoly by publicly acknowledging its relationship with Huawei?  Why did Seagate not disclaim that relationship so to prolong the purported monopoly and decrease the risk of regulatory scrutiny?  Plaintiffs' theory of fraud still does not make sense.

The more plausible inference is, as the Court previously found, Defendants "had a good faith, but ultimately erroneous, interpretation of the FDPR."  ECF No. 96 at 9-10.  The AC— devoid of any inconsistent information known to Defendants at the time—compels the same result.

## III.    THE AC FAILS TO PLEAD A VIOLATION OF RULE 10b-5(a) AND 5(c)

The Opposition confirms the AC's failure to plead a Rule 10b-5(a) and 5(c) claim.  The dissemination theory fails because the AC does not plead a material misstatement and scienter. *See* Sections I. and II., *supra.*  As discussed below, Plaintiffs' scheme liability theory also fails.

The AC fails to plead a deceptive scheme.  The "add[ed]" allegations that Defendants "hid[]" Seagate's partnership with Huawei, "stonewall[ed]" the Congressional investigation, and "attempt[ed] to divert new sales through a secret subsidiary" (Opp. at 22) have been raised before and are not supported by particularized *facts*.  *See* Sections I.A. and II.C., *supra*.  There was no deceptive scheme as Seagate acknowledged its continuing relationship with Huawei, Plaintiffs do not allege that Seagate's commercial agreements with, and HDD sales to, Huawei were a sham, and Plaintiffs do not dispute that those transactions were consistent with Seagate's normal course

---

1651995 (C.D. Cal. Feb. 6, 2020), did not even involve the PSLRA.  *In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3791716 (C.D. Cal. Mar. 12, 2012), and *SEC v. Brincat*, 2001 WL 1662099 (N.D. Ill. Dec. 6, 2001), involved a motion to compel discovery and a motion to strike affirmative defenses, respectively.  And most of the rest of Plaintiffs' cases involved motions for summary judgment.  *See SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072 (9th Cir. 2010); *In re Apple Inc. Sec. Litig.*, 678 F. Supp. 3d 1147 (N.D. Cal. 2023); *Plaskin*, 2020 WL 1651995, at *1.

of business—each of which undermines a scheme liability claim. *See* Op. Br. at 22-23.

Plaintiffs also fail to plead that the purported scheme had a deceptive "purpose and effect." Plaintiffs pay lip service to this element, claiming that the "purpose and effect" was "'to create the false appearance of fact'" (Opp. at 22), but do not state what the "false appearance of fact" was. There was no false appearance of fact. Defendants informed the market that Seagate would *continue* to sell HDDs to Huawei without a license after the promulgation of the FDPR and it did. Further dooming scheme liability is Plaintiffs' failure to show that *each* Defendant's conduct had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme. *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1048, 1052 (9th Cir. 2006), *vacated on other grounds by Simpson v. Homestore.com*, 519 F.3d 1041 (9th Cir. 2008); *see* Op. Br. at 22-24.

## IV.    THE AC FAILS TO PLEAD LOSS CAUSATION

The March 8 and July 21, 2022 disclosures were not corrective because, as Plaintiffs concede, they said nothing about Huawei or the relevant export laws. Opp. at 25. As such, Plaintiffs fail to "'trac[e] the loss back to the *very facts* about which the defendant lied.'" *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838 (9th Cir. 2022). Nor do the disclosures "relate back" to the alleged misstatements; they did not, as Plaintiffs assert, "acknowledge[] that the poor results were driven by declining HDD sales in China." Opp. at 25. Rather, they attributed the results to *non-HDD* related factors and reported an *increase* in shipped HDDs for Q4 2022.[18] Moreover, the disclosure must *not* relate to "'some other negative information about the company[,]'" *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016), whereas both disclosures do.

### CONCLUSION

For the reasons stated above, yet another amendment would be futile. The AC should be dismissed in its entirety, with prejudice. *See*, *e.g.*, *In re Cloudera, Inc. Sec. Litig.*, 121 F.4th 1180, 1190-91 (9th Cir. 2024) (affirming dismissal without leave to amend).

---

[18] The March 2022 disclosure "attributed the weakness to a variety of 'transitory' business factors, including 'freight logistics.'" ¶ 115. The July 2022 disclosure noted "impacts from COVID lockdowns in Asia, *non-HDD* component shortages, and global inflationary pressures" and an *increase* in HDD shipments for the quarter. ¶ 120; Ex. 24 at 3-4, 6 (attached to Supp. Rowe Dec.). The Court may properly consider earnings call or investor transcripts under the doctrine of incorporation by reference (¶¶ 7, 51, 112, 215-217, 261-262, 264) and judicial notice. *See* ECF No. 104-1 at 2-6, 8.

Dated:　January 16, 2025

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI,
Professional Corporation

By: */s/ Caz Hashemi*
　　　　Caz Hashemi

*Attorneys for Defendants*