Gregg S. Levin (admitted *pro hac vice*)
Lance V. Oliver (admitted *pro hac vice*)
William S. Norton (admitted *pro hac vice*)
Joshua C. Littlejohn (admitted *pro hac vice*)
Christopher F. Moriarty (admitted *pro hac vice*)
Andrew P. Arnold (admitted *pro hac vice*)
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
glevin@motleyrice.com
loliver@motleyrice.com
bnorton@motleyrice.com
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com
aarnold@motleyrice.com

*Co-Lead Counsel for Co-Lead Plaintiffs
Universal-Investment-Gesellschaft mbH,
Universal-Investment-Luxembourg S.A., and
UI BVK Kapitalverwaltungsgesellschaft mbH,
and the Class*

Salvatore J. Graziano (admitted *pro hac vice*)
Hannah Ross (admitted *pro hac vice*)
James A. Harrod (admitted *pro hac vice*)
Aasiya Mirza Glover (admitted *pro hac vice*)
Sarah Schmidt (admitted *pro hac vice*)
**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
hannah@blbglaw.com
jim.harrod@blbglaw.com
aasiya.glover@blbglaw.com
sarah.schmidt@blbglaw.com

*Co-Lead Counsel for Co-Lead Plaintiffs
Public Employees' Retirement System of
Mississippi and Arkansas Public Employees'
Retirement System, and the Class*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Seagate Technology Holdings plc Securities Litigation* | Case No. 3:23-cv-03431-RFL <br><br> <u>CLASS ACTION</u> <br><br> **LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND TO STAY PROCEEDINGS** <br><br> Date:   August 12, 2025 <br> Time:   10:00 a.m. <br> Judge:  Honorable Rita F. Lin <br> Courtroom:    15-18th Floor |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................................1

STATEMENT OF ISSUES (CIVIL L.R. 7-4(A)(3)) ......................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................2

I.      BACKGROUND ....................................................................................2

II.     LEGAL STANDARD.............................................................................5

III.    ARGUMENT .........................................................................................6

        A.     Defendants Identify No Controlling Questions of "*Pure*" Law...................6

        B.     Defendants Identify No Substantial Ground for Difference of Opinion ........................................................................................7

               1.     Seagate Was Required to Seek BIS Guidance or Refrain from Selling. ...................................................8

               2.     The Court Applied the Correct Scienter Standard .........................11

        C.     Interlocutory Appeal Will Delay Resolution of the Litigation ..................14

        D.     If the Court Grants Certification, It Should Not Enter a Stay....................14

IV.    CONCLUSION.....................................................................................15

## TABLE OF AUTHORITIES

CASES                                                                           Page(s)

*A.B. ex rel. Turner v. Google LLC*,
    2024 WL 4933345 (N.D. Cal. Dec. 2, 2024)..................................................................5, 6, 7

*Alliance for the Wild Rockies v. Petrick*,
    68 F.4th 475 (9th Cir. 2023) .......................................................................................13

*Arista Networks, Inc. v. Cisco Sys. Inc.*,
    2018 WL 2761855 (N.D. Cal. June 8, 2018) ..............................................................6

*Beal v. Royal Oak Bar*,
    2016 WL 3230887 (N.D. Cal. June 13, 2016) ............................................................8

*Bennett v. SimplexGrinnell LP*,
    2014 WL 4244045 (N.D. Cal. Aug. 15, 2014) .........................................................5, 6

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*,
    490 F.3d 718 (9th Cir. 2007) .....................................................................................14

*Brizzee v. Fred Meyer Stores, Inc.*,
    2008 WL 426510 (N.D. Cal. Feb. 13, 2008) ............................................................11

*In re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1981) ..................................................................................5, 7

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
    254 F.3d 882 (9th Cir. 2001) .......................................................................................8

*Clerkin v. Mylife.com, Inc.*,
    2011 WL 5573944 (N.D. Cal. Nov. 15, 2011) ...........................................................7

*Couch v. Telescope Inc.*,
    611 F.3d 629 (9th Cir. 2010) ..............................................................................1, 5, 6

*In re Delta Airlines, Inc.*,
    2024 WL 3850486 (C.D. Cal. May 30, 2024) ..........................................................7, 9

*DHR Int'l, Inc. v. Charlson*,
    2014 WL 5513718 (N.D. Cal. Oct. 31, 2014)...........................................................13

*Env't Prot. Info. Ctr. v. Pac. Lumber Co.*,
    2004 WL 838160 (N.D. Cal. Apr. 19, 2004) .............................................................5

*Flores v. Velocity Express*,
    2015 WL 4463639 (N.D. Cal. July 21, 2015)..........................................................13

*Greenspan v. Orrick, Herrington & Sutcliffe LLP*,
  2010 WL 3448240 (N.D. Cal. Sept. 1, 2010) ..............................................................................6

*Henley v. Jacobs*,
  2019 WL 8333448 (N.D. Cal. Oct. 25, 2019)..............................................................................5

*Hightower v. Schwarzenegger*,
  2009 WL 3756342 (E.D. Cal. Nov. 6, 2009)..............................................................................14

*Jackson-Jones v. Epoch Everlasting Plan, LLC*,
  2024 WL 3221738 (C.D. Cal. May 10, 2024) ...........................................................................11

*Jes Solar Co. v. Matinee Energy, Inc.*,
  2015 WL 10939972 (D. Ariz. Mar. 30, 2015) ...........................................................................13

*Ji v. Naver Corp.*,
  2024 WL 251402 (N.D. Cal. Jan. 23, 2024) ................................................................................6

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) ...................................................................................................15

*McNeil v. Aguilos*,
  820 F. Supp. 77 (S.D.N.Y. 1993) ..............................................................................................14

*Miller v. Philips N. Am. LLC*,
  No. 24-cv-03781, Order Denying Motion to Certify for Interlocutory Appeal (Apr.
  28, 2025) ......................................................................................................................................6

*Nathanson v. Polycom, Inc.*,
  87 F. Supp. 3d 966 (N.D. Cal. 2015) .........................................................................................13

*Ollie v. Waypoint Homes, Inc.*,
  2014 WL 5474606 (N.D. Cal. Oct. 28, 2014)..............................................................................6

*Paz v. AG Adriano Goldschmeid, Inc.*,
  2015 WL 12910749 (S.D. Cal. Jan. 27, 2015)............................................................................7

*Rabin v. PricewaterhouseCooopers LLP*,
  2017 WL 11662124 (N.D. Cal. Apr. 17, 2017) .......................................................................6, 7

*Ramos v. Cap. One, N.A.*,
  2017 WL 895635 (N.D. Cal. Mar. 7, 2017).................................................................................14

*Reese v. Malone*,
  747 F.3d 557 (9th Cir. 2014) .......................................................................................................2

*Richards v. Ernst & Young LLP*,
  2012 WL 92738 (N.D. Cal. Jan. 11, 2012) ................................................................................15

*Rieve v. Coventry Health Care, Inc.*,
  870 F. Supp. 2d 856 (C.D. Cal. 2012) .......................................................................................11

*Roby v. Stewart*,
    2012 WL 2428241 (N.D. Cal. June 26, 2012) ...........................................................................6

*Schueneman v. Arena Pharma., Inc.*,
    840 F. 3d 698 (9th Cir. 2016) .................................................................................................13

*Steshenko v. Gayrard*,
    2014 WL 7204784 (N.D. Cal. Dec. 16, 2024) ..........................................................................7

*Sullivan v. Kelly Servs., Inc.*,
    2010 WL 1445683 (N.D. Cal. Apr. 7, 2010) ...........................................................................14

*Tapia v. NaphCare Inc.*,
    2024 WL 1209735 (W.D. Wash. Mar. 21, 2024) .....................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .................................................................................................................12

*Tsyn v. Wells Fargo Advisors, LLC*,
    2016 WL 7635883 (N.D. Cal. June 27, 2016) ...........................................................................8

*U.S. Rubber Co. v. Wright*,
    359 F.2d 784 (9th Cir. 1966) ..................................................................................................11

*Union County, Iowa v. Piper Jaffray & Co., Inc.*,
    525 F.3d 643 (8th Cir. 2008) ....................................................................................................6

*United States ex rel. Ormsby v. Sutter Health*,
    444 F. Supp. 3d 1010 (N.D. Cal. 2020) ..................................................................................12

*United States v. Academy Mortgage Corp.*,
    2018 WL 4794231 (N.D. Cal. Oct. 3, 2018)..............................................................................2

*United States v. Amsurg Corp.*,
    2016 WL 304567 (E.D. Cal. Jan. 26, 2016) ............................................................................11

*United States v. Wen-Bing Soong*,
    2014 WL 988632 (N.D. Cal. Mar. 10, 2014).............................................................................9

*In re VeriFone Holdings, Inc. Sec. Litig.*,
    704 F.3d 694 (9th Cir. 2012) ..................................................................................................12

*Weiner v. Ocwen Fin. Corp.*,
    2017 WL 2797856 (E.D. Cal. June 28, 2017) ...........................................................................9

*Williams v. Cty. of Monterey*,
    2021 WL 1966711 (N.D. Cal. May 17, 2021)...........................................................................8

*Yong v. I.N.S.*,
    208 F.3d 1116 (9th Cir. 2000) ................................................................................................14

**STATUTES AND RULES**

15 C.F.R. § 732.1 ................................................................................................................10

15 C.F.R. § 732.2 ................................................................................................................10

15 C.F.R. § 734.9 ..................................................................................................................8

15 C.F.R. § 772.1 ...........................................................................................................2, 10

17 C.F.R. § 240.10b-5 ........................................................................................................12

28 U.S.C. § 1292(b) ................................................................................................ *passim*

85 Fed. Reg. 51596 (Aug. 17, 2020) ....................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ........................................................................................................3

### TABLE OF ABBREVIATIONS[1]

| Term/Abbreviation | Definition |
|---|---|
| AC | Plaintiffs' Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 100) |
| BIS | Bureau of Industry and Security |
| Commerce Committee | United States Senate Committee on Commerce, Science, and Transportation |
| EAR | Export Administration Regulations |
| Defendants | Seagate, William D. Mosley, and Gianluca Romano |
| ECCN | Export Control Classification Number |
| Final Rule[2] | 85 Fed. Reg. 51596 (Aug. 17, 2020) |
| FDP or FDPR | Foreign Direct Product Rule (the "Final Rule") |
| 2d Hr'g Tr. | Transcript of Hearing on Defendants' Motion to Dismiss the AC (ECF No. 111) |
| HDD | Hard disk drive |
| Huawei | Huawei Technologies Co. |
| KYC | BIS "Know Your Customer Guidance," Supplement No. 3 to 15 C.F.R. § 732 |
| Mot. or Motion | Defendants' Notice of Motion and Motion to Certify Order for Interlocutory Appeal and Stay Proceedings (ECF No. 124) |
| Order | Order Granting In Part and Denying In Part Motion to Dismiss (May 12, 2025) (ECF No. 113) |
| Seagate or the Company | Seagate Technology Holdings plc |
| "¶__" | Paragraphs of the Consolidated Class Action Complaint for Violations of Federal Securities Laws (ECF No. 100) |

---

[1] Unless otherwise noted, all emphasis is added and citations are omitted.

[2] While the AC refers to the August 17, 2020 Final Rule, 85 Fed. Reg. 51596, as the "FDPR," ¶ 38 n.3, the Final Rule added Huawei to the Entity List based on pre-existing authority provided by the previously existing FDPR, 15 C.F.R. § 736.2(b)(3). To clarify this distinction, Plaintiffs refer to 85 Fed. Reg. 51596 as the "Final Rule."

**INTRODUCTION**

This case concerns the fraudulent and deceptive conduct of Seagate and its executive officers, who concealed from the investing public the fact that Seagate continued to sell products to Huawei, after all of its competitors immediately ceased such sales following the FDPR. The Court sustained nearly all of Plaintiffs' allegations about Defendants' fraudulent conduct, finding that Plaintiffs had sufficiently alleged a scheme, falsity, and scienter based on numerous allegations regarding Defendants' concealment of its sales to Huawei. Those facts included, among others, Seagate's stonewalling of a congressional investigation, refusal to discuss the Company's Huawei sales, and ignoring of a letter from a supplier making clear that the FDPR applied to HDDs Seagate was selling to Huawei. The Court also held that Defendants' compliance statements supported falsity and scienter. In attesting to Seagate's compliance with the FDPR, Defendants necessarily denied that Seagate had "reasons for concern" about its Huawei sales, despite conduct demonstrating Defendants knew that Seagate did.

Disappointed with the Court's well-reasoned Order, Defendants now ask the Court to certify two "questions" for interlocutory appeal and stay discovery—but Defendants' Motion identifies no basis to grant these extraordinary requests. *See Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) ("A party's strong disagreement with the Court's [prior] ruling is not sufficient for there to be a 'substantial ground for difference.'"). Neither "question" meets the "exceptional situations" standard for interlocutory appeal or justifies a stay pending appeal, and discovery will further inform these disputes, finally unveiling what justifications Defendants purportedly claimed, if any, at the time of their continued illegal sales to Huawei.

First, Defendants disagree with the Court's holding on falsity, arguing that the Court's conclusions concerning the effect of the BIS guidance, with which Defendants repeatedly stated Seagate complied, was wrong. As a threshold matter, Defendants' interpretive disagreement is beside the point because Defendants have ***already conceded*** they misrepresented their compliance. The Court found that Defendants' deceptive conduct indicated that Seagate had "reasons for concern," and Defendants conceded that they represented to investors that Seagate had none. Further, Defendants' arguments about the proper interpretation of the BIS guidance

depend on a factual dispute about Defendants' "judgment" and "beliefs"—even if the Court had not rejected Defendants' scienter arguments, this factual dispute renders Defendants' question unsuitable for interlocutory appeal. Finally, on a plain reading of the governing regulations, Defendants' disagreement with the Court's interpretation is fatally flawed.

Second, Defendants' "question" about the appropriate knowledge standard under the BIS guidance is really a transparent challenge to the Court's application of the PSLRA scienter pleading standard to the facts of this case. The Court is neither required to accept Defendants' superficial framing of the issue, nor their patently incorrect articulation of the scienter standard. The Ninth Circuit's scienter pleading standards do not require that Defendants *knew* their interpretation of the FDPR was incorrect—only that they "*had reasonable grounds to believe*" their Huawei sales violated the FDPR "but nonetheless failed to obtain and disclose such facts although [they] could have done so without extraordinary effort." *Reese v. Malone*, 747 F.3d 557, 569 (9th Cir. 2014), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (2017).

Finally, Defendants have provided no basis to stay this action pending resolution of their Motion. *See United States v. Academy Mortgage Corp.*, 2018 WL 4794231, at *5 (N.D. Cal. Oct. 3, 2018) (where movant "does not have a strong likelihood of success on appeal, a stay may not result in the conservation of judicial resources, and the public interest in judicial economy does not strongly favor granting a stay"). To the contrary, discovery is expected to quickly undermine Defendants' arguments in this case.

## STATEMENT OF ISSUES (CIVIL L.R. 7-4(A)(3))

The Court must decide the following issues: (i) whether Defendants' "questions" present questions of "pure law," or rather depend on Defendants' disagreements with the Court's factual findings as to scienter and falsity; (ii) whether Defendants identify a substantial difference of opinion as to the requirements of the FDPR; and (iii) whether a stay is warranted.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    BACKGROUND

This case arises from Defendants' alleged false and misleading statements concerning

sales of more than *$1.1 billion* in HDDs to Huawei in violation of the FDPR. ¶¶60-61. As a penalty for these violations, BIS imposed an historic $300 million civil fine—the largest in its history and an upward penalty adjustment only warranted in "egregious" cases, including those where there is "reason to know" the subject conduct violates BIS regulations. ¶¶64-65.

Critically, as the Court concluded for purposes of a Rule 12(b)(6) motion to dismiss, Seagate effectively admitted in the BIS settlement that its interpretation was "not the result of negligence or carelessness." Order at 8. To the contrary, as the minority staff of the Commerce Committee found after a months-long investigation prompted by a whistleblower, Seagate "***knowingly violated***" the FDPR based on Seagate's "***strategic calculation***" that the revenue earned from an illegal monopoly—which Seagate only achieved when its competitors stopped shipping to Huawei after the enactment of the FDPR—would offset any potential penalty that BIS might impose. ¶¶102, 144. Nevertheless, Defendants issued false and misleading statements, representing to investors that Seagate complied with applicable export regulations and remaining silent regarding the significance of Huawei sales to the Company's revenue and financial performance. ¶¶164-259.

In September 2024, Plaintiffs filed the Consolidated Amended Complaint. ECF No. 100.[3] The Complaint included new scienter allegations, including that Seagate's supposed interpretation of the FDPR contradicted both its plain language and BIS guidance. Rejecting Defendants' argument that the Court's holding lowered the deliberate recklessness scienter standard, the Court held that Defendants' statements supported a strong inference of scienter because, in addition to other alleged facts, Seagate knew of "reasons for concern" about its sales to Huawei. Order at 12.

First, the Complaint alleged that the plain language of the FDPR covered Seagate's sales to Huawei because the HDDs sold to Huawei were subject to the FDPR. Specifically, the FDPR prohibits exports to Huawei when (1) "there is 'knowledge' that [a listed Huawei entity] is a party to ***any transaction*** involving the foreign-produced item" and (2) "the foreign-produced item is produced by any plant or major component of a plant that is located outside the United

---

[3] In October 2023, Plaintiffs filed the First Amended Complaint (ECF No. 72), which the Court dismissed with leave to amend. ECF No. 96 at 11.

States . . . [and that] itself is a direct product of U.S.-origin 'technology' or 'software' subject to the EAR that is specified in" certain ECCNs. ¶¶39-40. The Complaint alleges that BIS provides a clear description of the FDPR's scope: a "foreign-produced item is subject to the new control if the entity for which the item is destined has a footnote 1 designation in the Entity List." ¶37. In addition, in response to a public comment concerning the definition of "essential," BIS made clear that the term "essential" was very broad and covered "*any*" part, "*any*" component, "*any*" equipment, or "*any*" transaction with Huawei. *¶40.*

Second, BIS provided additional, specific guidance as to whether a transaction was subject to the FDPR's export restrictions. ¶¶41-43. That additional guidance included "Red Flag Indicators," designed to put companies like Seagate on notice that a transaction could be subject to the FDPR, and requiring Seagate to conduct due diligence if a "Red Flag" was identified. *Id.* One "Red Flag" was whether a customer is listed on one of the "U.S. Government Lists" of "parties prohibited or restricted from participating in U.S. export transactions"—exactly as Huawei was included on the BIS's Entity List. *Id.* The guidance further instructed that, if any doubts whatsoever remained after conducting due diligence, companies had to seek BIS approval by applying for a license—or else run the risk of knowingly violating the FDPR. *Id.*

After briefing and oral argument, this Court issued an opinion sustaining the majority of the Complaint's allegations. The Court found the following allegations in the Complaint supported an inference that, at the very least, Defendants were aware that there were reasons to believe their interpretation of the FDPR was wrong: (1) "Seagate's shift to refusing to discuss Huawei;" (2) Seagate's "choice to not publicize its strategic cooperation agreement with Huawei" despite doing so for similar agreements in the past; (3) Seagate's choice to stonewall the congressional investigation, including by refusing to provide the Commerce Committee with its own interpretation of the FDPR; (4) notice from a third-party supplier that the supplier's technology was restricted under the rule; and (5) that Seagate's interpretations were different from all others. Order at 11-13. These allegations are further supported by the $300 million penalty amount and related penalty guidance, which the Court noted suggests BIS "at the very least" concluded that "the company's conduct was not the result of negligence or carelessness."

*Id.* at 8.

In addition, the Court held that Seagate's representation that it remained in compliance with "all the rules and regulations" supported both falsity and scienter because it was a representation that Defendants were aware of BIS guidance suggesting there were reasons to believe its Huawei sales were illegal, yet "Seagate neither stopped its sales nor sought guidance" from BIS. *Id.* at 11. The Court specifically rejected Defendants' argument that inferring scienter based on "reasons for concern" instead of "known illegal conduct" would lower the scienter standard of "deliberate recklessness" to one of negligence. *Id.* at 12.

## II.   LEGAL STANDARD

"The final judgment rule generally mandates that parties may appeal only from orders which end the litigation on the merits and leave nothing for the court to do but execute the judgment." *A.B. ex rel. Turner v. Google LLC*, 2024 WL 4933345, at *4 (N.D. Cal. Dec. 2, 2024). Section 1292(b) sets forth a "narrow" exception to the final judgment rule, and should be applied "sparingly." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026-27 (9th Cir. 1981) (Section 1292(b) certification warranted "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation"); *see also Env't Prot. Info. Ctr. v. Pac. Lumber Co.*, 2004 WL 838160, at *4 (N.D. Cal. Apr. 19, 2004) (Section 1292(b) certification "is appropriate only in 'exceptional' or 'extraordinary' circumstances, not simply where issues are hard or questions are somewhat new"). The moving party bears the onerous burden of demonstrating that it meets all three independent statutory criteria set forth in § 1292(b).

First, the issue must involve a dispute over a "controlling question of law." *Bennett v. SimplexGrinnell LP*, 2014 WL 4244045, at *2 (N.D. Cal. Aug. 15, 2014). The requirement that the question presented is one "of law" means it must be "a purely legal one that can be resolved quickly without delving into a particular case's facts." *Henley v. Jacobs*, 2019 WL 8333448, at *2 (N.D. Cal. Oct. 25, 2019).

Second, the movant must demonstrate there is "substantial ground for difference of opinion." *Bennett*, 2014 WL 4244045, at *2. "To determine if a 'substantial ground for

difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch*, 611 F.3d at 633. "That district courts may reach different conclusions when applying these standards to unique factual scenarios is unremarkable, and does not necessitate an immediate appeal." *Ji v. Naver Corp.*, 2024 WL 251402, at *2 (N.D. Cal. Jan. 23, 2024). And "just because a court is the first to rule on a particular question … does not mean there is such a substantial difference of opinion." *Couch*, 611 F.3d at 633-34 (citing with approval *Union County, Iowa v. Piper Jaffray & Co., Inc.*, 525 F.3d 643, 647 (8th Cir. 2008) ("'[A] dearth of case law' does not constitute 'substantial ground for difference of opinion.'")); *see also Greenspan v. Orrick, Herrington & Sutcliffe LLP*, 2010 WL 3448240, at *1 (N.D. Cal. Sept. 1, 2010) ("novelty on its own is insufficient").

Third, it must be likely that an immediate interlocutory appeal "may materially advance the termination of th[e] litigation." *Bennett*, 2014 WL 4244045, at *1. This prong is satisfied when "the resolution of the question may appreciably shorten the time, effort, or expense of conducting the district court proceedings." *A.B.*, 2024 WL 4933345, at *4.

Here, Defendants cannot satisfy *any* of the three criteria.[4]

## III.     ARGUMENT

### A.     Defendants Identify No Controlling Questions of "*Pure*" Law.

Defendants' Motion fails prong 1 of the § 1292(b) analysis because it ignores the mandate that courts certify only questions of "*pure*" law. Contrary to Defendants' suggestion, Mot. at 4, "that the issue's resolution on appeal could materially affect the outcome of this litigation is not enough." *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 2761855, at *2 (N.D. Cal. June 8, 2018) ("A 'mixed question of law and fact or the application of law to a particular set of facts' is not appropriate for interlocutory review."); *see also Rabin v. PricewaterhouseCooopers LLP*, 2017 WL 11662124, at *1 (N.D. Cal. Apr. 17, 2017) (same). Therefore, when, as here, determination of defendants' questions "varies based on each case's unique factual circumstances," it "does not constitute a threshold legal issue" for "swift

---

[4] Even if those criteria are satisfied, a "district court has substantial discretion in deciding whether to grant a party's motion for certification." *Roby v. Stewart*, 2012 WL 2428241, at *1 (N.D. Cal. June 26, 2012).

resolution on appeal." Order Denying Motion to Certify for Interlocutory Appeal, at 3, *Miller v. Philips N. Am. LLC*, No. 24-cv-03781 (Apr. 28, 2025) (Lin, J.). *See also Ollie v. Waypoint Homes, Inc.*, 2014 WL 5474606, at \*3 (N.D. Cal. Oct. 28, 2014) (where the question to be certified "turns on an application of the law to the facts distinct to this case . . . the question is more aptly understood as an application of law to facts" that is not appropriate for certification.).

As described in more detail below, both of Defendants' "questions" raise issues of mixed fact and law, rendering these questions unsuitable for interlocutory appeal.

**B.     Defendants Identify No Substantial Ground for Difference of Opinion**

Defendants try to manufacture a "substantial ground for difference of opinion" by framing their questions as "novel." Mot. at 5. This should be rejected, as "novelty alone is insufficient." *Steshenko v. Gayrard*, 2014 WL 7204784, at \*2 (N.D. Cal. Dec. 16, 2024); *see also Clerkin v. Mylife.com, Inc.*, 2011 WL 5573944, at \*1 (N.D. Cal. Nov. 15, 2011) (interlocutory appeal requires *more* than "mere presence of a disputed issue that is a question of first impression"); *In re Delta Airlines, Inc.*, 2024 WL 3850486, at \*12 (C.D. Cal. May 30, 2024) (denying motion to certify interlocutory appeal on issue of first impression); *Paz v. AG Adriano Goldschmeid, Inc.*, 2015 WL 12910749, at \*2 (S.D. Cal. Jan. 27, 2015) ("Defendants are correct that the issue is one of first impression. However, that is insufficient to warrant certification under § 1292(b)."). Rather, "[g]enerally, courts have found this prong not satisfied when the moving party cannot identify *any* competing authority." *PricewaterhouseCooopers LLP*, 2017 WL 11662124, at \*2 (citing cases). Even the presence of *actual* "disagreement among district courts about an issue that has not yet been addressed by the appropriate court of appeals is generally insufficient to create a substantial ground for difference of opinion for the purposes of [Section] 1292(b)." *A.B.*, 2024 WL 4933345, at \*6 (denying motion). The extraordinary difficulty in establishing this prong reflects the purpose of § 1292(b), whose "legislative history of 1292(b) indicates that this section was to be used only in *exceptional situations* in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *Gayrard*, 2014 WL 7204784, at \*2 (quoting *In re Cement*, 673 F.2d at 1026).

Here, there are no grounds for a difference of opinion on either of Defendants' questions.

**1.    Seagate Was Required to Seek BIS Guidance or Refrain from Selling.**

This Court found that, in "stating [Seagate's] compliance with the FDPR and touting its familiarity with the regulations," despite having "reasons for concern" that sales to Huawei were illegal, Defendants made false and misleading statements. Order at 2. Defendants now ask the Court to change its mind[5]—arguing that the BIS guidance imposed no duty to refrain from the transaction or seek a license even where such "reasons for concern" exist. Defendants are wrong.

First, ***even assuming*** the BIS guidance applies only to the "end-user scope," and not "product scope," as Defendants argue, Defendants have ***conceded*** that they misrepresented to investors their compliance with the FDPR because under the "end-user scope" Seagate had "reasons for concern." Specifically, Defendants ***concede*** that: (i) "Seagate [was] representing that it was aware of this [BIS] guidance and in compliance with the regulations ***as interpreted by the guidance***," 2d Hr'g Tr. at 4:4-12; (ii) pursuant to the BIS guidance, the fact that Seagate was selling to Huawei, which was on the Entity List, raised a "reason[] for concern," Mot. at 5 ("Here, the 'end-user scope,' 15 C.F.R. § 734.9(e)(1)(ii) was undisputed."); *see also* 2d Hr'g Tr. at 4:20-21 ("Here the end user was obviously Huawei; everyone knew that."); and (iii) Seagate nevertheless represented to investors that it had no such "reasons for concern that its sales to Huawei violated the foreign direct product rule," *id*. at 5:16-6:9 ("It's the same."). Defendants also do not dispute that the BIS guidance instructs companies to take affirmative steps in the presence of certain Red Flags or "reasons for concern," Mot. at 7, and that Seagate did not take those affirmative steps.

---

[5] Defendants' Motion is a transparent request for reconsideration framed as a motion for leave to file an interlocutory appeal. *See* Mot. at 5 n.2 (asking the Court, ***in a footnote***, to "reconsider, or modify" its Order). This District's Local Rules impose a high burden for reconsideration, which Defendants do not even attempt to meet. *See* L.R. 7-9(b) (requiring the emergence of new facts or law or a "manifest failure" by the Court). Defendants' inapposite cases do not support a departure from the Local Rules in this case. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 884 (9th Cir. 2001) (no error when district court ***rescinded*** its certification, 12 days later, and after timely submission of opposition papers); *Williams v. Cty. of Monterey*, 2021 WL 1966711, at *2 (N.D. Cal. May 17, 2021) (reconsidering prior order despite movant's failure to follow L.R. 7-9(b) only because "[p]laintiffs' theories [were] presented cogently for the first time on reconsideration"); *Tsyn v. Wells Fargo Advisors, LLC*, 2016 WL 7635883, at *1 (N.D. Cal. June 27, 2016) (***denying*** motion for reconsideration of prior ***denial*** of certification for interlocutory appeal); *Beal v. Royal Oak Bar*, 2016 WL 3230887, at *2 (N.D. Cal. June 13, 2016) (after removal from state court, ***federal*** district court reconsidered sanctions orders issued by prior ***state court***).

These remarkable admissions are dispositive. While Defendants argue that they "believed" Seagate was in compliance with the "product scope" of the FDPR, Mot. at 8, they have **conceded** that they represented to investors that Seagate complied with the BIS guidance about "reasons for concern" even though it did not. In other words, even Defendants' own Motion presents no contrary argument to this Court's Order, or its finding that Plaintiffs' "allegations support a strong inference that Seagate was, at the very least, aware of reasons for concern about the legality of its sales to Huawei." Order, at 2-3; *see also Delta Airlines, Inc.*, 2024 WL 3850486, at \*12 (denying 1292(b) certification where defendant presented no cases, guidance, or arguments that "conflicts with the reasoning or [legal standard] adopted in the MSJ Order").

Second, Defendants rest their argument on a—new[6]—strained reading of the EAR and BIS guidance to wrongly argue that the "reasons for concern" language is only triggered **if** a company is uncertain about the "end-user scope." Mot. at 5-6. This argument, too, fails.

As a threshold matter, Defendants' argument depends entirely on their conclusory **factual** claim that Defendants "believed" that their HDDs did not fall under the "product scope" of the FDPR. Mot. at 8 (claiming, without citation, that Seagate "judged the HDDs to be out of the FDPR's 'product scope,'" and "reasonably believed itself in compliance with relevant regulations and the Guidance"). Defendants cite nothing for these factual statements, which contradict Plaintiffs' allegations and this Court's holdings on both the reasonable interpretation of "product scope" in the FDPR and Defendants' scienter. *See* Order, at 4-5 (interpreting the FDPR "to prohibit the export of items 'produced by' any essential equipment" that is a direct product "appears more faithful to the plain text of the FDPR"; Seagate's interpretation "would not make sense"; and "Seagate's strained interpretation also defies the purpose of the export restrictions"); *see also id.* at 2-11 (identifying multiple, non-exhaustive, bases "to infer that Seagate was aware that its activities might not comply with the requirements of the FDPR"). The centrality of this factual dispute to Defendants' new argument renders this question unsuitable for certification. *See Weiner v. Ocwen Fin. Corp.*, 2017 WL 2797856, at \*4 (E.D. Cal. June 28,

---

[6] This is Defendants' latest interpretive pivot in a series of changing interpretations. *See* ECF No. 105 at 14 n.10 (describing Defendants' shifting arguments).

2017) ("Where, as here, the alleged controlling question of law raised by Defendants is 'inextricably intertwined' with an analysis of Plaintiff's factual allegations, 'an interlocutory appeal is not appropriate.'"); *United States v. Wen-Bing Soong*, 2014 WL 988632, at \*1 (N.D. Cal. Mar. 10, 2014) ("simply arguing that the Court misapplied the existing law to the facts at hand" does not meet first requirement for interlocutory appeal).

In any event, Defendants' new interpretation is unreasonable. Order at 5. Even under Part 732, on which Defendants hang their new argument, Seagate was required to comply with the BIS *KYC* guidance regardless of any purported beliefs about "product scope." Part 732 requires companies to seek a license under "General Prohibition Ten (Knowledge Violation to Occur)," which prohibits exports where a company has "knowledge that a violation [of the EAR] has occurred or is about to occur." 15 C.F.R. § 732.1(a)(d)(x). The EAR defines "knowledge" as less than "positive knowledge," ¶42, requiring only "an awareness of a high probability of [a circumstance's] existence or future occurrence," which may be "inferred from evidence of the conscious disregard of facts known to a person and is also inferred from a person's willful avoidance of facts." 15 C.F.R. § 772.1 ("Knowledge"). Here, as this Court held, Plaintiffs alleged numerous facts of Defendants' "***knowledge*** that a violation has occurred or is about to occur," including, for example, the "October 2021 minority report from the Senate Commerce Committee [that] concluded that Seagate had '***knowingly violated*** the [FDPR] for more than one year.'" Order at 2-3. Critically, BIS *KYC* guidance applies to this general prohibition. *See* Supp. No. 3 to Part 732. Thus, because Defendants had "knowledge" of a violation, the BIS *KYC* guidance applied.

Finally, Part 732 would ***not*** absolve Seagate of its obligation to comply with the BIS *KYC* guidance even if it were undisputed that Defendants "believed" Seagate complied with the "product scope" of the FDPR. Part 732, by its own description, is a series of recommendations for consideration, ***not*** an exclusive, binary regime under which the "customer scope" BIS guidance is triggered ***only*** if Seagate agreed its HDDs fit within the FDPR's "product scope." 15 § C.F.R. 732.1(a)(1) (listing "logical steps … that you ***can*** take in reviewing" the EAR regulations, and the "steps" are only "suggested" and "designed to ***aid*** you in determining the

scope of the EAR"); 15 C.F.R. § 732.2.

### 2.    The Court Applied the Correct Scienter Standard

Defendants' Question 2 does not satisfy Section 1292(b) for multiple reasons.

First, whether the standard for knowledge under the EAR means "willful blindness" is a routine question of statutory and regulatory construction unsuited to § 1292(b) certification. *See Jackson-Jones v. Epoch Everlasting Plan, LLC*, 2024 WL 3221738, at *4 (C.D. Cal. May 10, 2024) (denying Section 1292(b) request and noting that "no truly difficult questions of first impression are presented in this case. District courts regularly resolve questions of statutory and regulatory construction."). Indeed, if every action involving regulatory interpretation raised certification-worthy issues, then virtually all such litigation would become immediately appealable. Section 1292 "'was not intended merely to provide review of difficult rulings in hard cases.'" *Brizzee v. Fred Meyer Stores, Inc.*, 2008 WL 426510, at *4 (N.D. Cal. Feb. 13, 2008) (quoting *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)). Moreover, Defendants point to no examples for their claim that certification is warranted simply because their incorrect interpretation of the Court's holding ***could*** have "wide-ranging ramifications" on "companies' legal obligations and liabilities," Mot. at 9; *see also id.* at 13—this is insufficient to grant certification. *See Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 879-80 (C.D. Cal. 2012) (no substantial ground for difference of opinion based on Defendants' "mere disagreement"). "Defendants do not point to any difference of opinion on this issue, except their own dislike of the Court's application of the facts of this case to the established law." *United States v. Amsurg Corp.*, 2016 WL 304567, at *8 (E.D. Cal. Jan. 26, 2016) (denying § 1292(b) request).

Second, Defendants' argument that the Court "interpreted 'reasons for concern' as establishing a standard [for scienter] that is much lower than" a willful blindness standard is misplaced. Mot. 9. In fact, the inquiry raised two questions that Defendants seek to conflate by suggesting that the standard for questions of scienter on a motion to dismiss are the same as those for the "reasons for concern" inquiry discussed above. The consideration of what scienter Defendants had in making public statements to investors includes a range of ***facts and inferences***

the Court considered (discussed below). The Court considered whether the Complaint's factual allegations met the applicable standards for pleading a strong inference of scienter. It is clear based on Defendants' prior argument on this exact point (*see* 2d Hr'g Tr. at 13:25-17:21) that the Court analyzed scienter under the applicable deliberate recklessness standard:

> Seagate suggests that to infer scienter based on "reasons for concern" rather than known illegal conduct would lower the pleading requirement of deliberate recklessness to the standard for negligence. But Seagate allegedly represented to investors, effectively, that it had no "reasons for concern" about the legality of its HDD sales. Because that is the representation Seagate made, ***the inquiry focuses on whether Seagate's representation was in fact false and whether Seagate knew it was false. That does not change the legal requirements for scienter.***

Order at 12.

Moreover, the Court made clear that its scienter analysis was not limited to whether Seagate had "reasons for concern":

> Seagate's choice to stonewall the congressional investigation, including by refusing to provide the Commerce Committee with its own interpretation of the FDPR, further supports an inference that the company believed it had reasons for concern that its interpretation was incorrect. ***This conduct supports an inference of scienter, especially when analyzed in light of the other indications that Seagate's interpretation was incorrect—such as that Seagate knew its interpretation was different from others', that it received notice from a third-party supplier that the supplier's technology was restricted under the rule, and that the Commerce Committee was investigating the issue***.

*Id.* at 11-12 (emphasis added).

The Court also credited multiple other allegations that raised a strong inference of scienter. *See, e.g.*, *id*. at 2, 11 (crediting allegations of Seagate's decision "to stop discussing its sales to customers" and abandoning its "typical practice" to remain silent on "a strategic cooperation agreement with Huawei"); *id*. (crediting allegations of Seagate's refusal to answer questions from Congress); *id*. (crediting allegations that the Commerce Committee minority report concluded that Seagate had "***knowingly***" violated the FDPR); *id*. at 5 n.2 (crediting allegations that BIS expressly referred companies to the BIS *KYC* guidance in the Final Rule promulgating the FDPR); *id*. at 7 (crediting allegations that "[t]hrough 2021, Seagate continued to receive notice that it may be in violation of the FDPR"); *id*. at 8 (crediting allegations that "[t]aking the penalty guidance into account, the $300 million penalty assessed against Seagate suggests that BIS concluded that, at the very least, the company's conduct was not the result of

negligence or carelessness").

The Court's analysis fits perfectly within the standard for scienter. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324, 326 (2007) (scienter adequately pled when, "assess[ing] all the allegations **holistically**," the plaintiff has created an inference of scienter that is "at least as compelling as any opposing inference one could draw from the facts alleged"); *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 708 (9th Cir. 2012) ("Recklessly turning a 'blind eye' to impropriety is [ ] culpable conduct under Rule 10b–5."); *United States ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010, 1071 (N.D. Cal. 2020) (holding that "even if a regulated party adopts a 'reasonable' interpretation of an 'ambiguous' statute, it can nonetheless be deemed liable for knowingly making a false statement if it 'had been warned away from that interpretation' by authoritative agency guidance"); *Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 979 (N.D. Cal. 2015) (one does not take steps to conceal misconduct "without intent to defraud"); *Schueneman v. Arena Pharma., Inc.*, 840 F. 3d 698, 709 (9th Cir. 2016) (rejecting defendants' claim of "good-faith scientific disagreement" and finding scienter because "the simple fact that Arena had an explanation for its view of the data does not mean investors would not want to know that Arena and the FDA were at odds"). Defendants' disagreement about the Court's findings as to their scienter does not mean the Court applied the wrong standard, or that their disagreement should be heard on an interlocutory appeal. *See Jes Solar Co. v. Matinee Energy, Inc.*, 2015 WL 10939972, at *11 (D. Ariz. Mar. 30, 2015) (denying Section 1292(b) request given that "[t]he Court is confident it applies the correct law and legal standards").[7]

At bottom, "disagreement with the Court's ruling is not sufficient to establish a 'substantial ground for difference of opinion.'" *DHR Int'l, Inc. v. Charlson*, 2014 WL 5513718, at *4 (N.D. Cal. Oct. 31, 2014). The Court should decline to certify Question 2.

---

[7] If Seagate genuinely wanted the clarity it now purportedly seeks, it would have done so during the public comment period, asked BIS for guidance, or simply sought a license. *See, e.g.*, *Alliance for the Wild Rockies v. Petrick*, 68 F.4th 475, 487-88 (9th Cir. 2023) (noting that "failure to raise arguments before an agency, such as in comments during a public-comment process, usually waives a litigant's rights to make those arguments in court."). Seagate did not do so, however, because, as the Commerce Committee concluded, "Seagate likely made the **strategic calculation** to continue violating national security regulations based on the prospect of earning significantly greater profits through market monopolization than the potential cost of regulatory penalties." ¶102.

### C.     Interlocutory Appeal Will Delay Resolution of the Litigation

"The Court need not examine the third prong [of the Section 1292 (b) test] in great detail because the first two prongs are not met." *Tapia v. NaphCare Inc.*, 2024 WL 1209735, at *4 (W.D. Wash. Mar. 21, 2024). Moreover, given Defendants' request for a stay in connection with the instant motion, their assertion that the third prong is met rings hollow. *See Flores v. Velocity Express*, 2015 WL 4463639, at *4 (N.D. Cal. July 21, 2015) ("Immediate appeal would not materially advance the litigation; in fact, it might have the opposite effect given that Defendants have also requested a stay in connection with the appeal. . . . This cost weighs against interlocutory appeal because it would not expedite the litigation.").

Defendants contend that if they should prevail on appeal, certification will save a "significant and potentially unnecessary" expenditure of resources. Mot. 14. But "[t]his is true any time a case-dispositive motion is denied," *Sullivan v. Kelly Servs., Inc.*, 2010 WL 1445683, at *2 (N.D. Cal. Apr. 7, 2010), and Defendants' simplistic approach runs headlong into the rule that interlocutory appeals are to be certified "sparingly," *Hightower v. Schwarzenegger*, 2009 WL 3756342, at *2 (E.D. Cal. Nov. 6, 2009). Additionally, Defendants' belief that their appeal will be successful is overly optimistic. When, as here, the proponent of an interlocutory appeal is unlikely to prevail, granting certification would just further delay the resolution of the action. *See McNeil v. Aguilos*, 820 F. Supp. 77, 80 (S.D.N.Y. 1993) ("Since the chances are overwhelming that the [movant] would not prevail in an interlocutory appeal, certification would far more likely delay the case than hasten its disposition").

### D.     If the Court Grants Certification, It Should Not Enter a Stay

Even if certification were granted over Plaintiffs' objections, no stay is warranted here. As an initial matter, Plaintiffs will be unduly prejudiced by virtue of their being unable to conduct timely discovery. Interlocutory appeals can significantly delay cases, as appellate courts may take months or even years to issue a ruling. *See Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000) (reversing stay and finding that the terms of the resolution of an appeal are "indefinite" adding that "the stay could remain in effect for a lengthy period of time, perhaps for

years").[8] And "[e]ven if litigation may eventually resume, such [indefinite] stays create a danger of denying justice by delay. Delay inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.,* 490 F.3d 718, 724 (9th Cir. 2007) (vacating stay order); *see also Ramos v. Cap. One, N.A.*, 2017 WL 895635, at *3 (N.D. Cal. Mar. 7, 2017) (denying requested stay and finding prejudice because "with passing time, there remains a risk of lost and destroyed evidence, as well as fading witness memories").

Moreover, as the Ninth Circuit has explained, the fact that Defendants will need to defend this case, "without more, does not constitute a clear case of hardship or inequity." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). All litigation entails the risk of expenses; granting a stay for that reason alone would nullify the Court's discretionary power.

Finally, when, as here, a movant does not have a strong likelihood of success on appeal, any interest in judicial economy does not strongly favor granting a stay. *See Richards v. Ernst & Young LLP*, 2012 WL 92738, at *4 (N.D. Cal. Jan. 11, 2012) ("[C]ourts tend to find that a stay is against the public interest where the moving party has not shown a sufficient likelihood of success on the merits."). Plaintiffs fully expect Defendants' discovery to quickly shed light on Seagate's shifting explanations of how it interpreted the FDPR before its historic settlement with BIS, and that discovery will be a more efficient way to proceed that the extraordinary interlocutory appeal Defendants seek.

## IV.    CONCLUSION

For the above reasons, Plaintiffs respectfully request the Court deny Defendants' Motion.

Dated: June 23, 2025

Respectfully submitted,

/s/ *Salvatore J. Graziano*
Salvatore J. Graziano

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
Salvatore J. Graziano (admitted *pro hac vice*)
Hannah Ross (admitted *pro hac vice*)
James A. Harrod (admitted *pro hac vice*)

---

[8] The median interval in the Ninth Circuit from the filing of notice of appeal or docket date to the last opinion or final order was 13.1 months during the 12-month period ending September 30, 2024. *See* https://www.uscourts.gov/sites/default/files/2025-01/jb_b4a_0930.2024.pdf.

Aasiya Mirza Glover (admitted *pro hac vice*)
Sarah Schmidt (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
hannah@blbglaw.com
jim.harrod@blbglaw.com
aasiya.glover@blbglaw.com
sarah.schmidt@blbglaw.com

-and-

Jonathan D. Uslaner (Bar No. 256898)
2121 Avenue of the Stars, Suite 2575
Los Angeles, California 90067
Telephone: (310) 819-3470
jonathanu@blbglaw.com

*Co-Lead Counsel for Co-Lead Plaintiffs Public Employees' Retirement System of Mississippi and Arkansas Public Employees' Retirement System, and the Class*

**MOTLEY RICE LLC**
Gregg S. Levin (admitted *pro hac vice*)
Lance V. Oliver (admitted *pro hac vice*)
William S. Norton (admitted *pro hac vice*)
Joshua C. Littlejohn (admitted *pro hac vice*)
Christopher F. Moriarty (admitted *pro hac vice*)
Andrew P. Arnold (admitted *pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
glevin@motleyrice.com
loliver@motleyrice.com
bnorton@motleyrice.com
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com
aarnold@motleyrice.com

*Co-Lead Counsel for Co-Lead Plaintiffs Universal-Investment-Gesellschaft mbH, Universal-Investment-Luxembourg S.A., and UI BVK Kapitalverwaltungsgesellschaft mbH, and the Class*

**BLEICHMAR FONTI & AULD LLP**
Lesley E. Weaver (SBN 191305)
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (415) 445-4020
lweaver@bfalaw.com

*Local Counsel for Co-Lead Plaintiff
Universal-Investment-Gesellschaft mbH,
Universal-Investment-Luxembourg S.A., and
UI BVK Kapitalverwaltungsgesellschaft mbH*

**DAVIDSON BOWIE, PLLC**
John L. Davidson (*pro hac vice*)
1062 Highland Colony Parkway 200 Concourse,
Suite 275 Ridgeland, MS 39157
Telephone: (601) 932-0028
jdavidson@dbslawfirm.net

*Additional Counsel for Co-Lead Plaintiffs Public
Employees' Retirement System of Mississippi*