CAZ HASHEMI, State Bar No. 210239
STEPHEN B. STRAIN, State Bar No. 291572
BETTY CHANG ROWE, State Bar No. 214068
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (866) 974-7329
Email: chashemi@wsgr.com
        sstrain@wsgr.com
        browe@wsgr.com


MARK R. YOHALEM, State Bar No. 243596
JULIA HU, State Bar No. 338226
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: mark.yohalem@wsgr.com
        julia.hu@wsgr.com

Attorneys for Defendants
Seagate Technology Holdings plc,
William D. Mosley, and Gianluca Romano

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re Seagate Technology Holdings plc, Securities Litigation* | ) Case No.: 3:23-cv-03431-RFL<br>)<br>) **DEFENDANTS' REPLY**<br>) **MEMORANDUM IN SUPPORT OF**<br>) **MOTION TO CERTIFY ORDER FOR**<br>) **INTERLOCUTORY APPEAL AND TO**<br>) **STAY PROCEEDINGS**<br>)<br>) Date:   August 12, 2025<br>) Time:  10:00 a.m.<br>) Judge: Honorable Rita F. Lin<br>) Courtroom: 15 – 18th Floor<br>)<br>)<br>) |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...........................................................................................................ii

REPLY MEMORANDUM OF POINTS AND AUTHORITIES.....................................................1

ARGUMENT ..................................................................................................................................2

I.      The Order Presents Two Controlling Questions of Law......................................................2

II.     There Is Substantial Ground for Differences of Opinion on Those Two Questions...........3

      A.      Question 1: Whether the "Reasons for Concern" Framework Applies...................3

      B.      Question 2: What the "Reasons for Concern" Standard Entails .............................7

III.    Interlocutory Appeal Will Materially Advance the Litigation............................................9

IV.     The Court Should Enter a Stay if Certification Is Granted ...............................................10

CONCLUSION ..............................................................................................................................10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Arista Networks, Inc. v. Cisco Sys. Inc.*,
2018 WL 2761855 (N.D. Cal. June 8, 2018) ...................................................................... 2

*Colony Cove Props., LLC v. City of Carson*,
640 F.3d 948 (9th Cir. 2011) ............................................................................................. 6

*Davoli v. Costco Wholesale Corp.*,
854 F. App'x 116 (9th Cir. 2021) ..................................................................................... 8, 9

*Env't. Prot. Info. Center v. Pacific Lumber Co.*,
2004 WL 838160 (N.D. Cal. Apr. 19, 2004) ...................................................................... 9

*Foothill Presbyterian Hosp. v. Shalala*,
1997 WL 367227 (C.D. Cal. Jan. 2, 1997),
*aff'd*, 152 F.3d 1132 (9th Cir. 1998) ................................................................................. 3

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) .............................................................................................. 9

*Hawaii ex rel. Louie v. JP Morgan Chase & Co.*,
921 F. Supp. 2d 1059 (D. Haw. 2013) ............................................................................. 2, 7

*Henley v. Jacobs*,
2019 WL 8333448 (N.D. Cal. Oct. 25, 2019) .................................................................... 2

*Hollinger v. Titan Cap. Corp.*,
914 F.2d 1564 (9th Cir. 1990) ........................................................................................... 9

*Ji v. Naver Corp.*,
2024 WL 251402 (N.D. Cal. Jan. 23, 2024) ...................................................................... 2

*Lakeland Vill. Homeowners Ass'n v. Great Am. Ins. Grp.*,
727 F. Supp. 2d 887 (E.D. Cal. 2010) ............................................................................. 10

*PharmacyChecker.com LLC v. LegitScript LLC*,
2024 WL 982784 (D. Or. Mar. 7, 2024),
*aff'd*, 137 F.4th 1031 (9th Cir. 2025) ................................................................................ 2

*Reese v. BP Exploration (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ........................................................................................ 3, 8, 9

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014) ............................................................................................. 9

*Ritz Camera & Image, LLC v. Sandisk Corp.*,
2011 WL 3957257 (N.D. Cal. Sept. 7, 2011) ................................................................... 10

*Rollins v. Dignity Health*,
2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) .................................................................. 10

*S.E.C. v. Mercury Interactive, LLC*,
    2011 WL 1335733 (N.D. Cal. Apr. 7, 2011) ...................................................................... 10

*Silbersher v. Allergan Inc.*,
    2021 WL 292244 (N.D. Cal. Jan. 28, 2021) ..................................................................... 10

*Steering Comm. v. United States*,
    6 F.3d 572 (9th Cir. 1993) ..................................................................................................1, 2

*United States v. Korotkiy*,
    118 F.4th 1202 (9th Cir. 2024) .............................................................................................. 3

*United States v. Wen-Bing Soong*,
    2014 WL 988632 (N.D. Cal. Mar. 10, 2014) ...................................................................... 2

*Weiner v. Ocwen Fin. Corp.*,
    2017 WL 2797856 (E.D. Cal. June 28, 2017) ..................................................................... 2

## RULES

15 C.F.R. Pt. 732, Supp. 3 .................................................................................... 4, 5, 6, 7, 8

15 C.F.R. § 732.1 ............................................................................................................. 3, 4

15 C.F.R. § 732.2 ............................................................................................................. 3, 7

15 C.F.R. § 732.3 ............................................................................................................. 3, 7

15 C.F.R. § 734.1 ................................................................................................................. 7

15 C.F.R. § 734.9 ............................................................................................................. 4, 5

15 C.F.R. § 772.1 ................................................................................................................. 8

## MISCELLANEOUS

*Export Administration Regulation; Simplification of Export Administration
Regulations*, 61 Fed. Reg. 12714 (Mar. 25, 1996) ................................................................ 7

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

The Order's interpretation of the FDPR in light of the Guidance presents two pure questions of law—as Plaintiffs put it, "question[s] of statutory and regulatory construction" (Opp. 11)—that are controlling and novel, such that immediate appeal would materially advance this litigation: (1) whether the "reasons for concern" framework applies to the issue here and (2) what that standard requires. *See Steering Comm. v. United States*, 6 F.3d 572, 575 (9th Cir. 1993) ("[w]hether the district court failed to articulate the appropriate standard" under federal regulations is appropriate for certification). Certification is warranted, as is a stay while an appeal is resolved by the Circuit.

Plaintiffs have cited no decision endorsing the construction of the FDPR and Guidance, and resulting theory of liability, that has now become the heart of this case. Per that theory, if a company has "any doubts whatsoever" regarding "whether a transaction [is] subject to the FDPR's export restrictions," that company is not in compliance if it proceeds with that transaction without first "seek[ing] BIS approval by applying for a license." Opp. 4. Per Plaintiffs, this need for pre-approval is triggered *any time* a transaction involves Huawei or any other entity on the Entity List, regardless of whether the company believes its product to be within the FDPR's product scope. *See id.* If such a bright-line legal duty had been created by the "Know Your Customer" Guidance, it would be clearly stated in the compliance steps set forth in Part 732 (to which the Guidance is a supplement), the Proposed Charging Letter (ECF No. 105-4), and Plaintiffs' complaint. It is not.

This sweeping, novel theory of liability is absent from those places because—in two ways—the Guidance cannot bear the weight placed upon it by Plaintiffs and the Order. First, the Guidance's "reasons for concern" language addresses factual uncertainty about the *customer* (*e.g.*, the real end-user or -use), not legal uncertainty about the FDPR's *product* scope. Second, "reasons for concern" does not mean "any doubts whatsoever"—rather, like willful blindness, it requires a company to believe the concern is highly probable. Defendants seek to certify questions on these two issues.

If the "any doubts whatsoever" legal theory now espoused by Plaintiffs and accepted in the Order is wrong, then the second motion to dismiss should have been granted like the first one was. Such an outcome would not merely materially advance the litigation; it would end it. And given the immense costs entailed by proceeding in the meanwhile, a stay is warranted if an appeal is certified.

**ARGUMENT**

**I.     The Order Presents Two Controlling Questions of Law**

The two questions presented go to the appropriate legal standard for compliance, not to "the application of [that standard] to a particular set of facts." Opp. 6. As Plaintiffs recognize, Opp. 6-7, the area of dispute is not factual. Defendants do not seek certification of whether the allegations support the *factual* premises that Defendants knew they were selling HDDs to Huawei, that Huawei was on the Entity List, and that Defendants had less than absolute certainty as to its interpretation of the FDPR's product scope. Order 2, 11. Instead, the two questions go to the governing legal standard: whether the EAR requires a license any time a company has "any doubts whatsoever" over its interpretation of the FDPR's product scope. *See Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1066 (D. Haw. 2013) ("*Louie*") (whether the court "used a broader definition" of a term in a regulation was a controlling question of law appropriate for certification).

These are "pure" questions of law going to whether the Court "articulate[d] the appropriate standard of conduct," not whether the Court "erred in applying the regulatory standard to the facts of this case." *Steering Comm.*, 6 F.3d at 575. They are not, as Plaintiffs claim, "mixed question[s] of law and fact" or "inextricably intertwined" with a factual dispute. Opp. 6-7, 9-10. Plaintiffs' cases are inapposite. There, the "legal conclusions necessarily change[d] depending on the facts,"[1] or the movant disputed whether the alleged facts satisfied an undisputed legal framework.[2] Here, Defendants seek the Ninth Circuit's guidance on the proper *legal framework*, raising two "questions of law, the answers to which would not necessarily depend on a fact-specific inquiry or set of assumptions." *PharmacyChecker.com LLC v. LegitScript LLC*, 2024 WL 982784, at *4 (D. Or. Mar. 7, 2024), *aff'd*, 137 F.4th 1031 (9th Cir. 2025). The Opposition eventually acknowledges as much. *See* Opp. 11 (characterizing Question 2 as one "of statutory and regulatory construction").

---

[1] *Weiner v. Ocwen Fin. Corp.*, 2017 WL 2797856, at *4 (E.D. Cal. June 28, 2017); *United States v. Wen-Bing Soong*, 2014 WL 988632, at *1 (N.D. Cal. Mar. 10, 2014) (misapplication of standard to facts at summary judgment); *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 2761855, at *2 (N.D. Cal. June 8, 2018) (similar).

[2] *See, e.g.*, *Henley v. Jacobs*, 2019 WL 8333448, at *2 (N.D. Cal. Oct. 25, 2019) (declining to certify challenges to "finding[s] that the pleadings sufficiently allege facts to" meet established standards); *Ji v. Naver Corp.*, 2024 WL 251402, at *2 (N.D. Cal. Jan. 23, 2024) (similar).

## II.     There Is Substantial Ground for Differences of Opinion on Those Two Questions

### A.     Question 1: Whether the "Reasons for Concern" Framework Applies

"[A] substantial ground for difference of opinion exists where novel and difficult questions of first impression are presented," *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("*Reese II*"), and Plaintiffs do not dispute that Question 1 is novel (Opp. 6-7). Further, whether a company must seek guidance if it has "reasons for concern" over its legal interpretation of "product scope" is not merely a novel question (Opp. 6), but also one on which reasonable jurists could disagree. The novelty explains the lack of contrary decisions and the need to focus on the regulatory text—particularly Part 732, to which the Guidance is a supplement.[3] The Guidance, the FDPR, and other EAR provisions all show that the "reasons for concern" addressed by the Guidance pertain to a company's uncertainty over the actual end-user or end-use, a *factual* inquiry separate from the *legal* determination whether a product is within the FDPR's scope. *See* Mot. 5-8.

The Opposition does not meaningfully engage with, let alone refute, the Motion's careful analysis of the regulations' express language and structure. For example, Plaintiffs cannot rebut the unequivocal language in the Steps and Part 732 that a company "may skip" the "Know Your Customer Guidance" if it determines (as Seagate did) that its transaction falls outside the product scope of the FDPR.[4] 15 C.F.R. §§ 732.2(f)(1), 732.3(f), (m); *see* Mot. 6. Plaintiffs now invoke General Prohibition Ten, but that is considered at the same "Step 18: Know Your Customer Guidance and General Prohibition Ten (Knowledge Violation to Occur)," 15 C.F.R. § 732.3(m),

---

[3] The Motion is not a motion for reconsideration, but Defendants offered authority that the Court may *sua sponte* reconsider any interlocutory order in the event that the Court chooses, upon considering Defendants' arguments for certification, to exercise its discretion to do so. Mot. 5 n.2.

[4] Unable to answer the Steps' plain language, Plaintiffs downplay Part 732—which consists of duly enacted regulations codified in the C.F.R.—as providing mere "recommendations," but characterize the Know Your Customer *Guidance* (a supplement to Part 732) as imposing duties that somehow trump Part 732's Steps. Opp. 10-11. The Steps "help determine [a company's] obligations under the EAR." 15 C.F.R. § 732.1(a)(1). And they "describe the organization of the EAR, the relationship among the provisions of the EAR, and the appropriate order for [a company] to consider the various provisions of the EAR," including the FDPR and the Guidance. *Id.* § 732.1(a)(2). To read the Guidance as contradicting and overriding the Steps would defy both the specific regulatory language and the general rule of regulatory interpretation that "all parts should be construed together to produce a harmonious whole." *Foothill Presbyterian Hosp. v. Shalala*, 1997 WL 367227, at *8 (C.D. Cal. Jan. 2, 1997), *aff'd*, 152 F.3d 1132 (9th Cir. 1998); *accord United States v. Korotkiy*, 118 F.4th 1202, 1213 (9th Cir. 2024). The Guidance does not permit, let alone require, such a reading.

that a company is directed to skip unless it determines its product is within the FDPR's scope. The "Steps Overview," cited by Plaintiffs, likewise puts General Prohibition Ten after the product-scope determination and likewise tells a company to "skip" General Prohibition Ten unless the product is determined to be in scope.[5] Neither the Guidance nor General Prohibition Ten helps Plaintiffs.

Part 732 refutes Plaintiffs' claim that "because Defendants had 'knowledge' of a violation, the BIS KYC Guidance applied." Opp. 10. The Guidance is applied not because of "knowledge of a violation" or a nominal customer being on the Entity List, but when a company determines its item is subject to the EAR, and "an unlawful diversion might be planned by [its] customer," 15 C.F.R. Pt. 732, Supp. 3; neither is alleged here. Even then, the Guidance helps determine whether there *is* a violation. *See id.* Plaintiffs have it backwards in arguing knowledge of a violation precedes (and triggers) application of the Guidance, and in claiming Defendants had such knowledge.

Regardless, Plaintiffs are wrong that Defendants' interpretation of the Guidance "hang[s]" on Part 732 alone. Opp. 10. The Motion detailed how the text of the FDPR and the Guidance, and their place within the EAR's overall scheme, all establish that the "reasons for concern" in the Guidance address factual uncertainty about the actual end-user or end-use—*i.e.*, the "end-user scope" of the FDPR. Mot. 5-8. Plaintiffs fail to engage with these arguments. For example, they do not dispute that the Guidance cannot apply to "product scope" as that provision lacks a "knowledge" requirement, 15 C.F.R. § 734.9(e)(1)(i), and the Guidance expressly applies to "requirements of the EAR [that] are dependent upon a person's *knowledge*," *id.* Pt. 732, Supp. 3. Nor do Plaintiffs address that the Guidance directs a company to seek a license only if "reasons for concern" persist "after [an] inquiry" into "*the end-use, end-user, or ultimate country of destination*," an inquiry irrelevant to a legal interpretation of "product scope." *Id.* Pt. 732, Supp. 3(a)(2) & (a)(6).

---

[5] The reference to General Prohibition Ten in the Steps Overview is part of subsubsection (d), titled "Does your item or activity require a license under one or more of the ten general prohibitions?" 15 C.F.R. § 732.1(d). As with the Steps, that subsection comes *after* subsection (c), titled "Are your items and activities subject to the EAR?" *Id.* § 732.1(c). Under that antecedent subsection, a company "should first determine whether [its] commodity, software, or technology is subject to the EAR." *Id.* The company "should go on to consider the ten general prohibitions" only if it determines that its "item or activity is subject to the EAR." *Id.* If, however, the company determines that the "item or activity is not subject to the EAR, [it] ha[s] no obligations under the EAR and *may skip the remaining steps*." *Id.*

Thus, Plaintiffs' claim that Defendants "conceded" Seagate knowingly "misrepresented" its "compliance with the FDPR" (Opp. 8) fundamentally misstates counsel's argument at the hearing. Counsel acknowledged that Seagate's statements could be construed to mean compliance with the EAR regulatory scheme, including "BIS guidance interpreting the direct product rule." A company complies with the BIS guidance (of which the Guidance is only one part) by following the Steps. And even taking the Guidance in isolation, a company complies if it "knows its customer"; unless there are "reasons for concern" about an unlawful diversion, indicated by "red flags [that] oblige [it] to take verification steps," the company can "rely upon representations from [its] customer" that there is no other end-user or end-use. 15 C.F.R. Pt. 732, Supp. 3(a)(2). Counsel's acknowledgment that it could be inferred from the allegations that Seagate indicated "it had no such 'reasons for concern ....'" was not some kind of "remarkable admission" (Opp. 8-9) but what logically follows from there being no alleged red flags of diversion. Since Seagate had no reasons for concern that the end-user was someone other than the nominal customer, the Guidance required nothing further.

As counsel explained, Seagate complied with any obligation to "Know Your Customer" because it knew the end-user customer was Huawei. *See* 3/4/5 Tr. 17:7-11 ("Here everyone knew [the actual end-user] was Huawei."). Investors knew that, too. *See, e.g.*, FAC ¶ 51 ("I don't see any particular restriction for us in term[s] of being able to continue to ship to Huawei."). And everyone knew Huawei was on the Entity List. *See, e.g.*, *id.* ¶¶ 28, 47. 51, 53, 55, 59 (analyst questions or reports acknowledging that Huawei was implicated in the amended FDPR). Seagate proceeded with the transaction not because it disregarded "reasons for concern" about an unlawful diversion to someone other than its nominal customer, but because the "end-user scope" was only half of the equation: "A foreign-produced item is subject to the EAR if it meets the product scope *and* end-user scope." 15 C.F.R. § 734.9(e). As the government's own Proposed Charging Letter stated: Seagate "incorrectly interpreted the FDP rule to require evaluation of only the last stage of its HDD manufacturing process rather than the entire process." ECF No. 105-4 at 34. That incorrect interpretation concerned product scope, not end-user scope, and Plaintiffs do not attempt to claim that Defendants somehow conceded that "reasons for concern" applies to product scope. *See* Opp. 8-9.

Plaintiffs are not actually defending the Order when they alternatively contend the "reasons for concern" standard applies here even if the "[G]uidance applies only to 'end-user scope,' and not 'product scope.'" Opp. 8. Plaintiffs claim Defendants had "reasons for concern" on *both* scopes. But the Order ruled only that Plaintiffs sufficiently alleged that Defendants had "'reasons for concern' about the *legality* of its HDD sales" (Order 12), not that Defendants had *factual* "reasons for concern" over the actual end-user or end-use. *See also* 3/4/25 Tr. 9:24-10:2 (question was whether Seagate had "any reasons for concern that its *interpretation* of the foreign direct product rule would be different than what BIS ultimately concluded"). Rightly so: that Seagate's construction of the FDPR's product scope was later deemed erroneous was the theory of both the BIS settlement (*e.g.*, ECF No. 105-4 at 34) and Plaintiffs' complaint (*e.g.*, FAC ¶¶ 3, 49, 66-74).

In arguing that Defendants had "reasons for concern" as to the end-user scope because the customer was Huawei, Plaintiffs misunderstand the Guidance and its place in the regulatory scheme. The explicit "concern" is that the company might not actually "know [its] customer." As explained, above the Guidance helps when the product is within the FDPR's scope but the nominal customer is *not* on the Entity List. Such a facially permissible transaction would be impermissible (without a license) if the *actual* ultimate end-user were on the Entity List, *i.e.*, if the nominal customer is planning "an unlawful diversion." 15 C.F.R. Pt. 732, Supp. 3. The red flags—such as the nominal customer having "little or no business background," *id.*—put the company on notice to inquire further into whether an unlawful diversion to another entity will take place. Plaintiffs simply misstate the Guidance when they claim that the nominal "customer [being] listed …. on the Entity List" is itself a "Red Flag" (FAC ¶ 42; *see* Opp. 4, 8)—it is not. *See* 15 C.F.R. Pt. 732, Supp. 3; *see Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 957 (9th Cir. 2011) (no "assumption of truthfulness to legal conclusions … that are contradicted by documents referred to in the Complaint"). And Plaintiffs likewise misstate the record when they claim that Defendants somehow conceded that "the fact that Seagate was selling to Huawei, which was on the Entity List, raised a 'reason for concern.'" Opp. 8. Indeed, such a red flag would make no sense: why would a company "inquire [further] about the end-use, end-user, or ultimate country of destination" if it already knew it was transacting with an entity on the Entity List? *See* 15 C.F.R. Pt. 732, Supp. 3(a)(2).

Finally, Plaintiffs run into worse problems with the overall regulatory scheme when they posit that if a "customer is listed … on the Entity List," then the company has "reasons for concern" and cannot proceed with the transaction without "tak[ing the] affirmative steps" set forth in the Guidance. Opp. 8. Since those steps require a license unless the "reasons for concern" are eliminated, 15 C.F.R. Pt. 732, Supp. 3(a)(6), that would mean that no company could sell *any* product, even one outside the EAR, to a customer on the Entity List without a license (since further inquiry could not change the fact the customer is on the Entity List). But the regulations make clear that if a product is outside the EAR, a company is not required to do anything further, let alone required to get a license. *See, e.g.*, *id.* § 734.1(a) ("If neither your item nor your activity is subject to the EAR, then you do not have any obligations under the EAR and you do not need to review other parts of the EAR."); *id.* §§ 732.2(f)(1), 732.3(f) (company "may skip" the Guidance if it determines item is outside the FDPR's product scope). Construing the Guidance to require a license any time a customer is on the Entity List would fundamentally transform the EAR, as "[n]o license or other authorization [is] required for any transaction under [BIS] jurisdiction unless the regulations **affirmatively state** the requirement." *Export Administration Regulation; Simplification of Export Administration Regulations*, 61 Fed. Reg. 12714 (Mar. 25, 1996).

In sum, reasonable jurists could differ with both the Order's construction (which applies the Guidance's "reasons for concern" to product scope) and Plaintiff's alternative (which treats the customer being on the Entity List as a "reason for concern" under the Guidance). *See Louie*, 921 F. Supp. 2d at 1067 (certifying "legal issues that are neither easy to decide nor well-settled").

**B.    Question 2: What the "Reasons for Concern" Standard Entails**

Defendants seek interlocutory review of the level of knowledge required under the "reasons for concern" standard—*i.e.*, whether it can be met by "notice that its conduct might conceivably violate the FDPR" (Order 5), or whether it must rise to a level akin to willful blindness (Mot. 9-13). Plaintiffs defend the Order's low standard, arguing a company has "reasons for concern" under the Guidance—and thus knowledge under the EAR and liability under the FDPR—if it has "any doubts whatsoever." *See* Opp. 4, 11-13. Defendants have more than a "disagreement" with the Order. Opp. 11, 13. Plaintiffs' inability to cite any authority in support of the Order's interpretation

of "reasons for concern" or to answer the authority cited in the Motion shows it is a novel ruling on which there is "a credible basis for a difference of opinion." *Reese II*, 643 F.3d at 688.

Indeed, the Guidance and EAR make clear that such an interpretation of "reasons for concern" is not merely debatable, but wrong—which is presumably why Plaintiffs do not attempt to defend the interpretation, but merely insist it is so "routine" a question as to be unworthy of interlocutory review. Opp. 11. Plaintiffs attempt to sidestep the question presented by arguing that the Court's articulation of *the Section 10(b)* standard was correct, and accuse Defendants of "conflat[ing]" the two standards. Opp. 2, 11-13. But Plaintiffs' arguments misconstrue the Order, the Motion, and the theory of liability they now seek to impose.

The Order's "reasons for concern" standard came not from Section 10(b), but from interpreting what compliance meant under the Guidance. Whether the Court correctly articulated the outer layer of Section 10(b) scienter is irrelevant to whether the Court correctly articulated the inner layer of EAR knowledge, to which the Guidance's "reasons for concern" expressly applies. If "reasons for concern" amounts to the same mental state as Section 10(b) scienter, *see* Mot. 9-13, then the second order—like the first order—should have granted dismissal. *Compare* ECF No. 96 at 2, *with* Order 2, 5, 12. But the Court denied dismissal because it interpreted "reasons for concern" to be a much lower standard—a standard satisfied, as Plaintiffs put it, whenever a company has "any doubts whatsoever." Opp. 4. That interpretation is subject to reasonable disagreement.

As explained in the Motion, and unanswered in the Opposition, the Guidance's "reasons for concern" standard is akin to willful blindness. It falls "under [the EAR] knowledge standard," which the Guidance "does not change or interpret." 15 C.F.R. Pt. 732, Supp. 3(a). Like the *Jewell* standard, the EAR standard can be satisfied by actual knowledge or a very high level of constructive knowledge. EAR knowledge (like willful blindness) demands far more than a showing of "any doubts whatsoever"; it requires "an awareness of a high probability" those doubts are correct, *e.g.*, "willful avoidance of facts." 15 C.F.R. § 772.1. Section 10(b) scienter is likewise akin to willful blindness. *Davoli v. Costco Wholesale Corp.*, 854 F. App'x 116, 117 n.1 (9th Cir. 2021). Thus, for the same reasons the Court ruled in its first order that Plaintiffs' allegations did not satisfy Section 10(b), those allegations do not satisfy the "reasons for concern" standard, properly construed.

Plaintiffs' argument primarily seems to be an effort to re-litigate the Court's prior determination that they could not satisfy Section 10(b). *See* Opp. 12-13. This is irrelevant to the question presented, unresponsive to the Motion, and ultimately wrong. Quoting the at-least-partially overruled decision in *Reese v. Malone*, 747 F.3d 557, 569 (9th Cir. 2014), Plaintiffs argue that deliberate recklessness can be shown by the non-disclosure of reasonable grounds for concern. Opp. 2, 12-13. But an *en banc* panel of the Ninth Circuit unanimously rejected *the exact language* quoted by Plaintiffs as "not clearly distinguishable from negligence," a standard far below the deliberate recklessness required for Section 10(b). *See Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990) (en banc). And the Circuit just reiterated the same point in *Davoli*, 854 F. App'x at 117 n.1. "Deliberate recklessness is a higher standard than mere recklessness," *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 765 (9th Cir. 2023), and recklessness is a higher standard than negligence. The portions of the Opposition articulating a watered-down version of Section 10(b) scienter are inapt, but they also serve to underscore the point made in the Motion: the Order's legal interpretation of "reasons for concern"/EAR knowledge does not merely transform export regulations, it would also fundamentally transform disclosure obligations.

## III. Interlocutory Appeal Will Materially Advance the Litigation

Plaintiffs argue that certification will not materially advance the litigation because "an interlocutory appeal is unlikely to prevail" and will take a long time. Opp. 14. But this Court "must assess whether immediate appellate court reversal will speed the outright disposition of this action … [t]he likelihood of success on the merits, and the typical lifespan of an appeal, do not answer the relevant question." *Env't. Prot. Info. Center v. Pacific Lumber Co.*, 2004 WL 838160, at *3 n.7 (N.D. Cal. Apr. 19, 2004). Plaintiffs do not dispute that if either question is decided in Defendants' favor, the ruling would have a "final, dispositive effect on the litigation." *Reese II*, 643 F.3d at 688. And for all the reasons set forth, there is ample reason for the Circuit to rule both that the Guidance applies only to factual uncertainty about the actual end-user or end-use and that the "reasons for concern" standard requires more than "any doubt whatsoever."

Even if the Ninth Circuit permitted the case to go forward, the parties would proceed "with greater certainty," which "could even encourage a negotiated settlement, which would not just

materially but completely advance the termination of this litigation." *See Rollins v. Dignity Health*, 2014 WL 6693891, at \*4 (N.D. Cal. Nov. 26, 2014); *accord S.E.C. v. Mercury Interactive, LLC*, 2011 WL 1335733, at \*3 (N.D. Cal. Apr. 7, 2011) (granting certification for interlocutory review).

## IV.     The Court Should Enter a Stay if Certification Is Granted

Instead of addressing the waste of judicial and party resources that would occur absent a stay pending resolution of an interlocutory appeal, Plaintiffs simply cite inapposite cases involving different kinds of appeals. *See* Opp. 14-15.[6] But when courts in this District certify interlocutory appeals, they routinely also issue stays. *See, e.g.*, *Rollins*, 2014 WL 6693891, at \*4; *Silbersher v. Allergan Inc.*, 2021 WL 292244, at \*3 (N.D. Cal. Jan. 28, 2021); *Ritz Camera & Image, LLC v. Sandisk Corp.*, 2011 WL 3957257, at \*3 (N.D. Cal. Sept. 7, 2011). As previously explained, *see* Mot. 14-15, such a stay is warranted where, as here, "it would be a waste of judicial and party resources to proceed with these claims while the appeal is pending." *See Lakeland Vill. Homeowners Ass'n v. Great Am. Ins. Grp.*, 727 F. Supp. 2d 887, 897 (E.D. Cal. 2010).

It is no answer for Plaintiffs to contend that a stay would affect their ability to conduct "timely discovery," Opp. 14, because resolution of the appeal would eliminate, or at least define the scope of, discovery. *See Silbersher*, 2021 WL 292244, at \*3 (granting stay pending appeal where "burdensome and expensive discovery" costs to the defendants "outweigh[] the countervailing burden on [plaintiff] caused by the delay associated with an immediate appeal"). Discovery in securities cases can be particularly costly, and "[t]hese costs could be avoided, perhaps entirely, by a reversal at the Court of Appeals." *See Rollins*, 2014 WL 6693891, at \*2. Defendants do not seek an indefinite stay, and "Plaintiffs will not be injured by freezing discovery now; they will merely have to wait until … it is clearer that such discovery is needed." *See id*. at \*5.

## CONCLUSION

For all these reasons, both questions should be certified, and a stay should be granted pending the Ninth Circuit's review of those questions.

---

[6] These cases either address a stay pending resolution of the appeal in an allegedly related case, a stay pending resolution of a party's bankruptcy court proceedings, or a stay pending appeal of an order denying a motion to compel arbitration. *See* Opp. 14-15. None of them are relevant where, as here, the Court considers a stay pending interlocutory appeal of dispositive issues in the same case.

DEFS' REPLY ISO MOT. FOR CERT OF INTERLOCUTORY     -10-        CASE NO.: 3:23-CV-03431-RFL
APPEAL AND STAY PENDING APPEAL

Dated: June 30, 2025

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:      */s/ Caz Hashemi*
             Caz Hashemi

*Attorney for Defendants Seagate Technology Holdings plc, William D. Mosley, and Gianluca Romano*