UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL-INVESTMENT-GESELLSCHAFT MBH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SEAGATE TECHNOLOGY HOLDINGS PLC, et al.,<br><br>Defendants. | Case No. 23-cv-03431-RFL<br><br>**ORDER DENYING MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL**<br><br>Re: Dkt. No. 124 |

Plaintiffs brought this lawsuit against Seagate Technology Holdings plc and two of its executive officers, William D. Mosley and Gianluca Romano (collectively, "Seagate"), alleging that Seagate violated Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 and Rule 10b-5, 17 C.F.R. § 240.10b-5. Plaintiffs' claims were based on Seagate's statements regarding its sales of hard disk drive ("HDD") technology to Huawei Technologies Co., Ltd. ("Huawei"). On May 12, 2025, the Court granted in part and denied in part Seagate's motion to dismiss. (Dkt. No. 113 ("MTD Order").) Now, Seagate moves for certification for interlocutory appeal and to stay the case. (Dkt. No. 124.) For the reasons stated below, the motion is **DENIED**. This order assumes that the reader is familiar with the facts of the case, the applicable legal standards, and the parties' arguments.

I.    **LEGAL STANDARD**

Requests for certification for interlocutory appeal are granted only in exceptional circumstances. Under 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal if it is "of the opinion that such order involves a controlling question of law as to which

1

there is substantial ground for difference of opinion and that an immediate appeal from the order

may materially advance the ultimate termination of the litigation." The party making the request

bears the burden of demonstrating that these requirements have been met. *Couch v. Telescope*

*Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

## II.    DISCUSSION

Seagate has failed to carry its burden. Seagate contends that two controlling questions of

law exist: (1) whether the Export Administration Regulation ("EAR") requires a company to

seek guidance from the Bureau of Industry and Security ("BIS") when it has "reasons for

concern" over its legal interpretation of the Foreign Direct Product Rule's ("FDPR") product

scope provisions ("Question One") and (2) whether "reasons for concern" must rise beyond

notice that conduct might conceivably violate the FDPR to a level akin to willful blindness

("Question Two")? Both are mixed questions of law and fact not suitable for interlocutory

review. *See ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1132

(9th Cir. 2022). Additionally, Seagate has waived the arguments it is asking to make on appeal.

### A.    Question One

Seagate now argues that the FDPR provides for two distinct inquiries into "product

scope" and "end-user scope," and that the BIS Know Your Customer guidance (the "Guidance")

is directed solely at determining the true identity of the end-user of the transaction at issue.

Thus, Seagate contends that when it represented that it was in compliance with all applicable

rules and regulations, including the BIS guidance, it was implying only that it had no reasons for

concern as to the identity of the end-user—since Seagate was aware that it was transacting with

Huawei—as opposed to having no reasons for concern that the transaction violated the FDPR.

However, at the hearing on the motion to dismiss, Seagate took a different position:

> THE COURT: Was Seagate representing that it had reason -- it had
> no reason for concern that its sales to Huawei violated the foreign
> direct product rule?
>
> MR. HASHEMI: Yes, that's the reasonable inference that could be
> drawn from the allegations of the complaint, Your Honor.

Moreover, the week before the hearing on the motion to dismiss, the Court issued a Notice of Questions asking the parties to be prepared to address the following question at the hearing: "By representing that [Seagate] was in compliance with applicable FDPR regulations, was Seagate representing that it was aware of [the BIS] guidance and in compliance with the regulations as interpreted by this guidance? If so, was Seagate therefore representing that it had no 'reasons for concern' about its sales to Huawei after its inquiry on the topic, since it did not seek a license or other guidance from BIS?" (Dkt. No. 107 at 1.)[1] At the hearing, when asked a paraphrased version of the same question, Seagate confirmed the answer to both questions was "Yes," and described the analysis as "the same" as to both.

Seagate now advances a different theory: that the BIS guidance, and the duty the guidance triggers, is inapplicable because it applies only to situations in which an entity does not know the true end-user of the transaction. According to this new position, Seagate's statements of compliance may only be reasonably interpreted as representations that it had no reasons for concern over what entity it was transacting with, because its customer was already known. Seagate thus contends that those statements did not represent a lack of concern about "product scope": that is, whether the HDDs counted as the "direct product" of restricted technology when that technology was used at an earlier stage of the manufacturing process rather than in the final stage.

But what Seagate's representations can reasonably be taken to mean is a mixed question of law and fact. At this stage of the proceedings, and as Seagate conceded at the hearing, Plaintiffs have plausibly alleged that Seagate represented that it had no reasons for concern that its sales to Huawei violated the FDPR. Certainly, the Guidance was focused on "red flag" scenarios where the true identity of the end-user is not disclosed, and the guidance discussed those situations extensively. At the same time, the guidance specifically indicates a broader reach, stating that it applies to situations concerning "knowledge of the end-use, end-user,

---

[1] Citations to page numbers refer to the ECF pagination.

ultimate destination, *or other facts relating to a transaction or activity,*" and that "[t]hese provisions include . . . the prohibition against proceeding with a transaction with knowledge that a violation of the EAR has occurred or is about to occur."  BIS's "Know Your Customer" Guidance and Red Flags, 15 C.F.R. Pt. 732, Supp. 3 (emphasis added); *see also id.* (noting that the scenarios listed were "not all-inclusive" and that red flags broadly included "circumstances that should cause reasonable suspicion that a transaction will violate the EAR"); 15 C.F.R. § 764.2(e) (prohibiting transactions "with knowledge that a violation of . . . the EAR . . . has occurred [or] is about to occur").  Furthermore, as Plaintiffs alleged in the operative complaint (*see* Dkt. No. 100 ("Compl.") ¶¶ 41-43), BIS itself described the Guidance as pertaining to product scope in the Notice of Final Rulemaking for the FDPR.  Specifically, BIS identified that guidance as providing "direction on the scope of due diligence warranted" as to "the production line" and "supply chains" of "suppliers."  (Dkt. No. 105-3 at 6 ("The EAR's definition of 'knowledge' and the BIS's *Know Your Customer* guidance provide direction on the scope of due diligence warranted.").)  It is thus plausible that when Seagate stated that it was aware of and complied with all applicable rules and regulations, it could be reasonably interpreted to mean that it had no reasons for concern that its transaction with Huawei may be violating the FDPR, as Seagate's counsel had originally conceded.

Moreover, "[c]ourts have long made clear [] that 'a party normally may not press an argument on appeal that it failed to raise in the district court.'"  *Schoenmann v. Schoenmann*, No. 22-cv-09156-AMO, 2024 WL 4227587, at *9 (N.D. Cal. Sept. 17, 2024) (quoting *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1158 (9th Cir. 2009)); *see also Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 n.1 (9th Cir. 2002) ("This rule, however, is discretionary and [courts] may consider an issue on appeal 'when the question is a purely legal one that is both central to the case and important to the public.'" (quoting *Abex Corp. v. Ski's Enters. Inc.*, 748 F.2d 513, 516 (9th Cir. 1984))).  Because Seagate did not advance this theory in its briefing on the motion to dismiss, it is not properly appealable.

####    B.      Question Two

According to Seagate, when it represented that it lacked "reasons for concern," that

representation meant only that Seagate lacked actual knowledge of a violation and was not

willfully blind to one.  Seagate relies on the following provision in the EAR:

> Knowledge of a circumstance (the term may be a variant, such as
> "know," "reason to know," or "reason to believe") includes not only
> positive knowledge that the circumstance exists or is substantially
> certain to occur, but also an awareness of a high probability of its
> existence or future occurrence. Such awareness is inferred from
> evidence of the conscious disregard of facts known to a person and
> is also inferred from a person's willful avoidance of facts.

15 C.F.R. § 772.1.  Seagate contends that, because the purpose of the Guidance is to explain

what constitutes "knowledge" of an EAR violation, the term "reasons for concern" could refer

only to actual knowledge or willful blindness.  In other words, Seagate argues that it could only

have "reasons for concern" if it had "reason to know."

That does not seem to be the natural reading of the EAR and the Guidance.  The

Guidance indicates that "knowledge" of a violation can be inferred when a party proceeds with a

transaction without inquiring with BIS despite having "reasons for concern."  In other words, the

Guidance was warning parties that they had an obligation to investigate and inquire if they had

reasons for concern, and if they did not, they would be viewed as engaging in a "willful

avoidance of facts."  Accordingly, "reasons for concern" does not seem to require "knowledge"

or a "reason to know."  That interpretation is consistent with the plain meaning of the term

"reasons for concern."

In any event, this issue presents another mixed question of law and fact as to what

Seagate's representations are reasonably understood to mean.  Here, Plaintiffs have plausibly

alleged that Seagate was aware of the high probability that its interpretation of the FDPR was

incorrect, yet did not inquire in the manner it knew was required under the Guidance.

Accordingly, even if Seagate were correct that the Guidance could potentially set the bar too low

for knowledge under the EAR in some situations, Plaintiffs have adequately alleged that this was

not the case here because Seagate was aware of the high probability of a violation and turned a

blind eye.

Moreover, Seagate did not make this argument in its motion to dismiss, and as such, it is waived. Therefore, this question is similarly not suitable for certification for interlocutory appeal.

## III.    CONCLUSION

For the foregoing reasons, the motion for certification for interlocutory appeal is denied.[2]


**IT IS SO ORDERED.**

Dated: August 29, 2025

_____
RITA F. LIN
United States District Judge

---

[2] In a footnote, Seagate requested that the Court exercise its inherent power to reconsider the order. That request is waived, as it was raised in passing in a footnote, and in any event, would be denied for the same reasons explained above.